Mary Elizabeth YOUNG, Appellant,

v.

Nelson Lee YOUNG, Respondent.

No. WD 64114.

Missouri Court of Appeals, Western District.

Jan. 18, 2005.

---

**2.** Because we reach this conclusion, we need not address Ferrari's remaining contentions on appeal.

John Stapleton, Kansas City, MO, for Appellant

Nelson Young, Florence, MS, pro se.

PAUL M. SPINDEN, Judge.

Mary Elizabeth Young appeals the circuit court's judgment denying her motion to modify a decree dissolving her marriage to Nelson Lee Young. When the couple divorced in May 2000, Nelson Young was retired from the military and drawing a non-disability retired military pension. The circuit court decreed to Mary Young "a monthly government allotment of $412.00" but did not mention Nelson Young's military pension specifically. Neither party appealed the judgment, and Nelson Young paid as the decree ordered until November 2002.

Mary Young asked the circuit court in March 2003 to modify its decree to order Nelson Young to continue "the monthly spousal retired military pay as a division of property" and to increase the amount to 50 percent of Nelson Young's disposable income. The circuit court modified its decree to award to Mary Young "$412.00 per month of [Nelson Young's] military retired pay to be paid to her directly by the Veteran's Administration."

Three weeks later, Mary Young asked the circuit court to modify its order again because the decree did not set out a percentage of Nelson Young's pay as required by the Defense Finance and Accounting Service. Mary Young asked the circuit court to designate a percentage of Nelson Young's retirement pay. Mary Young also noted that, by directing the VA to pay the $412 monthly allotment, Mary Young could cease to receive her money if Nelson Young were terminated or left his job. She, therefore, asked that the $412 be deducted from Nelson Young's retirement pay.

In response, the circuit court vacated its earlier modification decree and returned the matter to the contested docket. The circuit court ordered Mary Young to present authority demonstrating that it had subject matter jurisdiction to modify the allotment and change its designation from a "monthly government allotment to monthly spousal retired military pay." The circuit court denied her motion to modify for lack of subject matter jurisdiction. The circuit court noted that the proper remedy for modifying a dissolution decree that divided marital property was a petition in equity to divide previously omitted marital property. After moving for reconsideration, Mary Young appealed.

■ A dissolution decree is not modifiable after it becomes final unless the decree was a qualified domestic relations order. Section 452.330.5, RSMo 2000; *see Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988) (final judgment distributing marital property cannot be modified). Thus, the critical issue is whether or not

the dissolution decree was intended to be a QDRO. If so, the circuit court had jurisdiction to " 'establish[ ] or maintain[ ] the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of order.' " *Seal v. Raw,* 954 S.W.2d 681, 685 (Mo.App. 1997) (quoting Section 452.330.5, RSMo 1994). The circuit court, however, could not alter its original order to increase the amount payable unless this "effectuate[d] the expressed intent of [the] order." *Id.*

■ A QDRO allows a circuit court to "enforce a nonplan participant's right to 'child support, alimony payments, or marital property rights' previously granted by 'any judgment, decree, or order (including approval of a property settlement agreement).' " *Id.* at 684 (quoting 29 U.S.C. Section 1056(d)(3)(B)(ii) (Supp.1997)). A QDRO is:

[A] domestic relations order—

(I) [W]hich creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) [W]ith respect to which the requirements of subparagraphs (C) and (D) are met[.] [1]

29 U.S.C. Section 1056(d)(3)(B)(i). At subsection (ii), the statute further defines a domestic relations order:

[A]ny judgment, decree, or order (including approval of a property settlement agreement) which—

(I) [R]elates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) [I]s made pursuant to a State domestic relations law (including a community property law).

The circuit court's order in this case was a domestic relations order. Whether or not it intended for it to be a *qualified* domestic relations order is unclear. The order's phrasing suggests that the government was to pay Mary Young directly, which would suggest that the order was intended to be a QDRO, but we find no evidence that this money was to come from a qualified plan. *See* 29 U.S.C. Section 1056(d)(3)(B)(i)(I). Although the order recognized that Mary Young was to receive a $412 "monthly government allotment," we find no discussion in the record that either the circuit court or the parties intended for the allotment to come from Nelson Young's non-disability military pension. The Contested and Uncontested Proceeding Information Form filed in the case listed the $412 as maintenance. The record is silent as to whether or not Nelson Young was drawing a pension and

---

1. Subparagraphs (C) and (D) of 29 U.S.C. Section 1056(d)(3) say, "(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies. (D) A domestic relations order meets the requirements of this subparagraph only if such order—(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order."

giving $412 of that pension to Mary Young when the couple separated. Perhaps Mary Young was receiving $412 each month from Nelson Young's pension, but this record does not inform us that she was. Thus, we cannot discern whether or not the circuit court intended for the $412 to come from Nelson Young's pension and for its order to be a QDRO.

■ Hence, we remand to the circuit court for it to determine the question of whether or not it intended its order to be a QDRO. If so, the circuit court is not without jurisdiction and may modify its decree after declaring it to be a QDRO. *Ochoa v. Ochoa*, 71 S.W.3d 593, 596 (Mo. banc 2002) ("By statute, an order so intended may be modified in order to 'establish' it as a QDRO."). The circuit court, however, does not have jurisdiction to grant Mary Young's request that her allotment be increased. *Seal*, 954 S.W.2d at 685.

■ Mary Young's remaining arguments under Section 452.330 and Rule 74.06 are inapposite. Section 452.330 applies only to those instances in which the court lacked personal jurisdiction over an absent spouse. The circuit court had jurisdiction over Nelson Young because he entered an appearance, so Section 452.330 does not help Mary Young. Rule 74.06 allows a post final judgment motion, but only if it is filed within one year of the dissolution—clearly not the case here.

HAROLD L. LOWENSTEIN, Presiding Judge, and JAMES M. SMART, JR., Judge concur.