**In the Interest of BABY BOY R., a/k/a S.V.R., A Child.**

**No. 05–04–01437–CV.**

Court of Appeals of Texas, Dallas.

May 22, 2006.

William Gidney, Arcadia, FL, appellant pro se.

David Cole, Dallas, for appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

William Harold Gidney, Jr. appeals the termination of his parental rights to Baby Boy R. a/k/a S.V.R. (the child).[1] In his pro se briefs on appeal, Gidney makes many arguments which may be generally categorized as complaining of the denial of his constitutional rights and the sufficiency of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

### BACKGROUND

In 2003, while estranged from his wife, Gidney met Shannon Ruane on the internet. A few weeks later, Gidney moved to Pennsylvania to live with Ruane. About two months later, Ruane became pregnant. At some point during Ruane's pregnancy, Gidney was arrested on a warrant out of Florida for the 2001 aggravated sexual assault of his stepdaughter. He was transported to a Florida jail pending resolution of the charges. While Gidney was in jail, Ruane decided to place the child for adoption and chose the family she wanted to adopt the child.

Little Flower Adoptions, retained by the adoptive family, filed a petition to terminate the parental rights of Ruane and Gidney in February 2004. The child was born March 2, 2004. Two days later, Ruane executed an affidavit relinquishing her parental rights, and the child was discharged into the custody of the adoptive family where he has been since that date. Ruane also executed an affidavit in which she stated Gidney was the child's alleged biological father.

Little Flower Adoptions alleged violations of section 161.001(1) of the Texas Family Code as grounds to terminate Gidney's parental rights. TEX. FAM.CODE ANN. § 161.001(1) (Vernon Supp.2005). It also alleged that termination of the parent-child relationship was in the best interest of the child. *Id.* § 161.001(2).

In his response, letters, and other documents filed in the trial court, Gidney asserted that he is the father of the child and contested the adoption. He urged the trial court to place the child with his mother, the child's paternal grandmother, or his brother, the child's paternal uncle. Gidney executed a power of attorney purporting to give his mother legal authority regarding custody of the child.

In the meantime, on April 7, 2004, Gidney pleaded guilty to the offense of aggravated sexual assault of his stepdaughter and was sentenced to ten years' confinement in the Florida Department of Corrections. At some point, the trial court set the termination case for trial on June 2, 2004. On May 13, 2004, Gidney filed a motion for continuance in which he requested an additional sixty days to hire a lawyer to represent him in the termination case. The record does not indicate whether the trial court ruled on the motion, but the case proceeded to trial on June 2. We may infer the trial court overruled Gidney's motion for continuance. TEX.R.APP. P. 33.1(a)(2)(A); *Williams v. Bank One,*

---

1. The parental rights of the child's mother were also terminated in this proceeding. The mother filed an affidavit of relinquishment of her parental rights and does not appeal. Gidney argues the mother's affidavit is "illegal" because one of the witnesses was the birth mother's mother, who, he contends, is not a "disinterested" witness. Even if Gidney had standing to contest the validity of the mother's affidavit of relinquishment, which we do not decide, the family code requires only that the witnesses be "credible." *See* TEX. FAM. CODE ANN. § 161.103 (Vernon Supp.2005). Gidney has offered no argument or authorities that state a relative cannot be a credible witness or that this particular witness was not credible.

*Texas, N.A.,* 15 S.W.3d 110, 114 (Tex.App.-Waco 1999, no pet).

When the court called the case for trial on June 2, the court "sounded the hall" for Gidney. No attorney appeared for Gidney, although his mother and cousin appeared but were not allowed to speak. Kris Miller, executive director of Little Flower Adoptions, was the only witness that testified at trial. She testified about how Gidney and Ruane met, the bases for terminating Gidney and Ruane's parental rights, and the placement of the child. Miller testified that Gidney's parental rights should be terminated because, among other reasons, he engaged in conduct that endangered the physical and emotional well-being of the child. She testified that termination of Gidney's parental rights was in the best interest of the child.

### A. Trial Court's Findings

The trial court made the following findings in its decree of termination:

The Court finds by clear and convincing evidence that a parent-child relationship between the subject child [and Gidney] does not exist in law or in fact;

The Court finds by clear and convincing evidence that, after service of citation, [Gidney] has failed to respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160 of the Texas Family Code;

The Court finds by clear and convincing evidence that [Gidney] has voluntarily, and with knowledge of the pregnancy, abandoned the mother beginning at a time during her pregnancy with the subject child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the subject child, and remained apart from the subject child or failed to support the subject child since the birth;

The Court finds by clear and convincing evidence that [Gidney] has engaged in conduct or knowingly placed the subject child with persons who engaged in conduct which endangered the physical or emotional well-being of the subject child;

The Court finds by clear and convincing evidence that termination, foreclosure, and divestiture of any parent-child relationship between the alleged biological father, [Gidney], and the subject child, [Baby Boy R.], is in the best interest of the subject child.

The trial court appointed Little Flower Adoptions as the permanent managing conservator of the child.

### B. Gidney's Issues on Appeal

Gidney appeals the trial court's judgment terminating his parental rights, assigning as issues:

(1) The trial court unconstitutionally denied Gidney access to the trial;

(2) Gidney did not voluntarily nor knowingly abandon Ruane or the child and did not fail to provide for the child since birth;

(3) Little Flower Adoptions kidnapped the child;

(4) Gidney's mother was a party to the suit as the legally appointed custodial relative of the child;

(5) The trial court ignored his timely and properly filed pretrial motions, including a motion for continuance and a motion for custody;

(6)(a) Allowing interstate adoption by non-relatives of the child when Gidney and his legally appointed relatives were prepared to care for the child was unconstitutional and not in the child's best interest;

(6)(b) If the interstate adoption was by Ruane's relatives allowing Ruane to maintain her familial relationship with the child in an effort to avoid family court and deprive Gidney and the child of their substantive rights of association, it was a fraud on the trial court and not in the child's best interest;

(7) The child was knowingly and willingly conceived by Gidney and Ruane who were in a committed relationship and engaged to be married on November 1, 2004;

(8) Gidney did not engage in any criminal or civil conduct to justify termination of his parental rights, and termination of his parental rights was not in the child's best interest;

(9) The trial court denied Gidney and the child effective assistance of counsel by conducting trial without the presence of the child's guardian ad litem;

(10) Ruane and the adoptive parents did not have a substantive constitutional custodial liberty interest regarding the child; and

(11) The trial court violated and failed to protect the due process rights of Gidney and the child.

### C. Considerations with Pro Se Party

■ Gidney is before this Court pro se. We are obligated to construe the rules of appellate procedure reasonably, yet liberally, so that the right to appeal is not lost. *See Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex.App.-Dallas 2005, no pet.). Likewise, we are obligated to liberally construe the points raised in Gidney's briefs. *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex.1995). However, a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *Kaposta*, 152 S.W.3d at 841; *see Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex.2005); *Strange v.*

*Cont'l Cas. Co.*, 126 S.W.3d 676, 677 (Tex. App.-Dallas 2004, pet. denied).

### CONSTITUTIONAL ISSUES

■ Gidney is incarcerated in Florida and has been incarcerated since before the child's birth. He argues on appeal that he was denied access to the trial in violation of his due process, confrontation, and equal protection rights under the United States and Texas Constitutions when the trial court refused to allow him to appear by telephone, refused to allow his mother to speak on his behalf, and ignored his pretrial motions for custody and for a continuance to hire a lawyer. He also claims the trial court violated his constitutional rights by not requiring the child's guardian ad litem to attend trial.

■ We conclude Gidney failed to preserve his constitutional claims. We have reviewed the papers Gidney filed with the trial court, and he did not raise any constitutional ground or cite any constitutional authority in any pretrial or post-judgment motion. Constitutional claims must be raised below or they are not preserved for appellate review. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex.2003); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex.2001). Under the rules of appellate procedure, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefor, and obtain a ruling. TEX.R.APP. P. 33.1. In a termination case, "adhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose." *In re L.M.I.*, 119 S.W.3d at 708. And "allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus ' "[promoting] the child's interest in a final decision and

thus placement in a safe and stable home." ' " *Id.* at 711 (quoting *In re B.L.D. & B.R.D.,* 113 S.W.3d 340, 353 (Tex.2003) (quoting *In re J.F.C.,* 96 S.W.3d 256, 304 (Tex.2002))). Accordingly, we conclude the constitutional arguments Gidney raises here were not preserved below.[2] *Id.*

### A. Appearance by Telephone

Additionally, nothing in the record shows that Gidney ever asked the trial court to allow him to appear by telephone or other than in person. In the documents Gidney sent to the court up until the time of trial, he advised the trial court he was seeking counsel or needed additional time to hire counsel. But nothing contained in the substance of the motions he filed apprised the trial court that Gidney asked to appear at trial by telephone. As a result,

Gidney has not preserved error for our review on this issue.[3] Tex.R.App. P. 33.1.

### B. Motion for Continuance

■ Even if we construe Gidney's argument about the denial of his motion for continuance as one of abuse of discretion rather than as a claim of violation of constitutional rights, his motion was not verified, consented to by the parties, or mandated by operation of law. *See* Tex.R. Civ. P. 251. Generally, a court does not abuse its discretion by denying a motion that does not comply with the rules. *Rosedale Partners, Ltd. v. Resolution Trust Corp.,* 882 S.W.2d 622, 630 (Tex.App.-Corpus Christi 1994, writ denied). But even if the trial court erred by not granting Gidney an additional sixty days to hire an attorney, Gidney has not shown how the failure to grant the continuance probably caused the

---

**2.** Gidney also complains that the trial court denied him effective assistance of counsel by not requiring the guardian ad litem to attend trial. The court's docket sheet indicates the court appointed an amicus attorney in this matter. An "amicus attorney" is "an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." *See* Tex. Fam.Code Ann § 107.001(1) (Vernon Supp.2005). The role of the amicus attorney is not to provide legal representation to the parent, but to assist the court in protecting the child. *See id.* Because this petition to terminate parental rights was not filed by a governmental entity, when the petition was filed in 2004, the court had discretion whether to even appoint an amicus attorney or a guardian ad litem. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 262, § 1, 2003 Tex. Gen. Laws 1173, 1181–82 (current version at Tex. Fam.Code Ann. § 107.021(a) (Vernon Supp.2005)). Even if Gidney had standing to raise this issue and had preserved it for our review, he has not shown how the court abused its discretion or how he was harmed when the court proceeded to trial without the amicus attorney. Based on our analysis, *infra,* of the child's best interest, any alleged

error was harmless. *See* Tex.R.App. P. 44.1(a)(1).

**3.** In a "motion for appeal" filed in the trial court on October 4, 2004, four months after the trial, Gidney attached several documents, including an "Inmate Request" form dated May 28, 2004, four days before the scheduled trial date of June 2. Taking the substance of the form as true, Gidney apparently asked the Florida Department of Corrections to facilitate his appearance at trial by telephone. The Inmate Request form was stamped received by "F.R.C. Classification M/U" on June 7, 2004. A response from F.R.C. was sent to Gidney dated June 10, 2004, and stated that a message was left with the court concerning a telephone appearance at trial. Nothing about this form demonstrates that Gidney asked the trial court for permission to appear by telephone. The form, although attached to a motion filed months after the trial, was not admitted into evidence and at best shows the Florida Department of Corrections may have contacted the trial court but only after the trial had already occurred. Additionally, we note that no local rules exist that authorize Gidney's appearance by telephone and Gidney has cited no authority otherwise. *See generally* Dallas (Tex.) Civ. Dist. Ct. Loc. R.

rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1); *Bank of Texas, N.A., Trustee v. Mexia*, 135 S.W.3d 356, 364 (Tex.App.-Dallas 2004, pet. denied).

### SUFFICIENCY OF THE EVIDENCE

On appeal, Gidney argues (1) he contested the adoption, (2) he did not knowingly or voluntarily abandon Ruane or the child, and (3) there is no evidence to show he committed a crime or a tort against Ruane or the child. Gidney also argues that allowing the child to be adopted by non-family members was not in the best interest of the child. We construe these issues as complaining of the legal and factual sufficiency of the evidence to support the bases for termination as stated in the trial court's decree. In a nonjury case, complaints regarding the legal or factual insufficiency of the evidence may be made for the first time on appeal. TEX.R.APP. P. 33.1(d).

### A. Standard of Review and Applicable Law

#### 1. Parent–Child Relationship

■ In its decree of termination, the trial court found by clear and convincing evidence that a parent-child relationship between Gidney and the child did not exist in law or in fact. We note that Gidney was never adjudicated the child's father and is not a "parent" within the meaning of the family code.[4] *See In re S.C.L.*, 175 S.W.3d

555, 559 (Tex.App.-Dallas 2005, no pet.). "Parent" is defined as "the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father." TEX. FAM.CODE ANN. § 101.024 (Vernon Supp.2005). The family code provides that a parent-child relationship is established between a man and a child by: (1) an unrebutted presumption of the man's paternity of the child under section 160.204; (2) an effective acknowledgment of paternity by the man under subchapter D; (3) an adjudication of the man's paternity; (4) the adoption of the child by the man; or (5) the man's consenting to assisted reproduction by his wife under subchapter H. TEX. FAM.CODE ANN. § 160.201(b) (Vernon 2002).

None of these subsections applies in this case. Gidney is not the child's presumed father because he was not married to Ruane nor did he continuously reside in the child's household for the first two years of the child's life. *See* TEX. FAM. CODE ANN. § 160.204(a) (Vernon Supp. 2005). Although Gidney admitted he is the child's biological father,[5] he did not file an acknowledgment of paternity as provided under sections 160.301 and 160.302 of the family code to establish a man's paternity. *See* TEX. FAM.CODE ANN. §§ 160.301, .302 (Vernon Supp.2005 & Vernon 2002).[6]

***

**4.** The petition for termination and Ruane's affidavit of status state Gidney is the "alleged biological father." An "alleged father" is "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." TEX. FAM.CODE ANN. § 101.0015(a) (Vernon 2002).

**5.** Gidney filed letters and other documents with the court stating he is the child's biological father.

**6.** The family code provides that "[t]he mother of a child and a man claiming to be the biological father of the child may sign an acknowledgment of paternity with the intent to establish the man's paternity." TEX. FAM. CODE ANN. § 160.301 (Vernon Supp.2005). The acknowledgment of paternity must:

(1) be in a record;
(2) be signed, or otherwise authenticated, under penalty of perjury by the mother and the man seeking to establish paternity;

Additionally, he has not been adjudicated the child's father, has not adopted the child, and nothing in the record indicates the child was born as a result of Gidney consenting to assisted reproduction under subchapter H of the family code. *See* TEX. FAM.CODE ANN. §§ 160.701–.707 (Vernon 2002 & Supp.2005). Accordingly, no parent-child relationship as defined by the family code existed between Gidney and the child.[7]

### 2. *Termination of Parental Rights.*

The trial court also terminated Gidney's parental rights based on violations of section 160.001(1), and Gidney challenges the sufficiency of the evidence to support the termination on those grounds.

A trial court may terminate the parent-child relationship if the fact finder finds by clear and convincing evidence (1) a parent committed one or more of the enumerated statutory acts in section 161.001(1) of the family code, and (2) termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001. Due process requires that each finding be based on clear and convincing evidence. *Id.* § 161.206(a). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all of the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002). In doing so, we presume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* On the other hand, we disregard all evidence a reasonable fact finder could have disbelieved or found not to have been credible. *Id.*

In reviewing the factual sufficiency of the evidence, we again look at all of the evidence and give due consideration to evidence the fact finder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266. When the evidence is disputed, we consider whether that disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* We should not reverse a judgment unless the fact finder could not reasonably have formed a firm conviction or belief that termination of the father's parental rights was in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

---

(3) state that the child whose paternity is being acknowledged:
  (A) does not have a presumed father or has a presumed father whose full name is stated; and
  (B) does not have another acknowledged or adjudicated father;
(4) state whether there has been genetic testing and, if so, that the acknowledging man's claim of paternity is consistent with the results of the testing; and
(5) state that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of the paternity of the child and that a challenge to the acknowledgment is permitted only under lim-

ited circumstances and is barred after four years.
TEX. FAM.CODE ANN. § 160.302(a) (Vernon 2002).

7. It follows, then, that the power of attorney Gidney gave to his mother had no legal effect to transfer custodial rights that he never had in the first place. Gidney has cited no authority to the contrary. Additionally, Gidney has cited no authority stating he could appear at trial through a non-lawyer representative upon whom he had bestowed his power of attorney. *See* TEX.R. CIV. P. 7.

## B. Grounds for Termination of Gidney's Parental Rights

As one basis for termination of Gidney's parental rights, the trial court found that Gidney "engaged in conduct or knowingly placed the subject child with persons who engaged in conduct which endangered the physical or emotional well-being of the subject child." *See* Tex. Fam. Code Ann. § 161.001(1)(E). Gidney argues the evidence is insufficient to support the trial court's judgment. We disagree.

A parent's conduct need not be directed at the child or result in injury to the child to constitute endangerment. *See Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). Conduct that constitutes child endangerment under section 161.001(1)(E) can be inferred from parental misconduct even though there is no showing of an actual or concrete threat of injury to the child's emotional or physical well-being. *In re J.C.,* 151 S.W.3d 284, 288 (Tex.App.-Texarkana 2004, no pet.). Instability and incarceration can be a continuing course of conduct supporting termination. *In re D.M.,* 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no pet.). And a parent's conduct toward a stepchild will suffice to support termination of another child, even if that conduct did not occur in the child's presence. *Lucas v. Tex. Dep't Protective & Regulatory Servs.,* 949 S.W.2d 500, 503 (Tex.App.-Waco 1997, writ denied), *disapproved on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex.2002); *Trevino v. Tex. Dep't of Protective & Regulatory Servs.,* 893 S.W.2d 243, 248 (Tex. App.-Austin 1995, no writ). Texas case law also holds that conduct occurring prior to the birth of the child toward other children is a relevant consideration under subsection 161.001(1)(E). *Director of Dallas County Child Protective Servs. Unit v. Bowling,* 833 S.W.2d 730, 733–34 (Tex. App.-Dallas 1992, no writ); *In re U.P.,* 105 S.W.3d 222, 234 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *but see Wetzel v. Wetzel,* 715 S.W.2d 387, 391 (Tex.App.-Dallas 1986, no writ) (acts done in distant past, without showing present or future danger to child, insufficient to terminate parental rights).

At trial, Miller testified that Gidney was married to another woman when he moved in with Ruane in Pennsylvania, that he was arrested on a warrant out of Florida charging him with aggravated sexual assault of his stepdaughter, and that he pleaded guilty to that offense and was sentenced to ten years' confinement in Florida. We may infer from Gidney's plea of guilty to aggravated sexual assault of his stepdaughter that Gidney engaged in conduct that will endanger or jeopardize the physical or emotional well-being of other children in the home who may discover the abuse or be abused themselves. *See In re King,* 15 S.W.3d 272, 276 (Tex.App.-Texarkana 2000, pet. denied), *disapproved on other grounds by In re C.H.,* 89 S.W.3d 17 (Tex.2002); *In re K.M.M.,* 993 S.W.2d 225, 227–28 (Tex.App.-Eastland 1999, no pet.). We conclude that a reasonable trier of fact could have formed a firm belief or conviction that Gidney, having pleaded guilty to aggravated sexual assault of his stepchild, engaged in conduct which had the effect of endangering the child's physical or emotional well-being. *J.F.C.,* 96 S.W.3d at 266; *King,* 15 S.W.3d at 276. Accordingly, we conclude there is both legally and factually sufficient clear and convincing evidence to support the trial court's finding that Gidney engaged in conduct that endangered the physical or emotional well-being of the child.

## C. The Child's Best Interest

We now turn to whether termination was in the best interest of the child. The non-exclusive factors we consider in-

clude: the child's desires, the child's present and future emotional and physical needs, the present and future emotional and physical danger to the child, the parenting abilities of the persons seeking custody, the programs available to the persons seeking custody to help promote the best interest of the child, the plans for the child by those persons seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *In re J.A.*, 109 S.W.3d 869, 876–77 (Tex.App.-Dallas 2003, pet. denied).

At the time of trial, the child was three months old and unable to express any desires regarding termination of Gidney's parental rights. Indeed, the child had never met Gidney. The evidence showed Ruane voluntarily relinquished her parental rights to the child on March 4, 2004, two days after he was born, and the child has lived with his adoptive parents since that time. Gidney was incarcerated before the child was born. Although the record reveals Gidney asserted paternity and attempted to establish a relationship with the child through the paternal grandmother and uncle of the child, Gidney was never adjudicated the child's father and never established a legal parent-child relationship with the child.

Additionally, Gidney stands convicted of aggravated sexual assault of another child. Gidney insists he is innocent and that the only evidence of his guilt was perjured testimony. However, it is undisputed that Gidney pleaded guilty to the offense. Gidney essentially conceded in his pleadings below that he was unable to care for the child until he is released from prison. *See C.H.*, 89 S.W.3d at 28 (evidence undisputed that father unable to care for child from prison). And nothing in the record indicates when Gidney's release might occur. He gave his mother a power of attorney and asked the trial court to award her custody of the child until his release. But his mother did not file any pleadings below which the trial court could have construed as a request to be appointed conservator of the child. *See* Tex. Fam.Code Ann. § 102.004 (Vernon Supp.2005).

The evidence also showed that Ruane selected the family to adopt the child and that an agency in the state where the family resides is supervising the placement of the child with this family. Miller testified the child is doing well with the family and believes the adoption with this family will be finalized.

Based on the nature of the relationship between Gidney and Ruane, Gidney's marital status at the time the child was conceived, Gidney's conviction for aggravated sexual assault of another child, and his incarceration for ten years, we conclude the evidence is legally and factually sufficient to show that termination of Gidney's parental rights was in the child's best interest

## Conclusion

The trial court did not err by finding that clear and convincing evidence established that Gidney engaged in conduct which endangered the physical or emotional well-being of the child and that termination of Gidney's parental rights was in the best interest of the child. Because we affirm the trial court's judgment on the ground Gidney engaged in conduct which endangered the physical or emotional well-being of the child, *see* Tex. Fam.Code Ann. § 161.001(1)(E), we do not reach Gidney's remaining issues. We overrule Gidney's issues complaining of the sufficiency of the

evidence. We affirm the judgment of the trial court.