

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00040-CV
No. 07-21-00041-CV
No. 07-21-00042-CV

## IN THE INTEREST OF I.E., M.E., D.R., L.R., AND H.T.-D., CHILDREN

On Appeal from the 108th & 320th District Courts
Potter County, Texas
Trial Court Nos. 093946-E-FM, 75729-00-D, 77615-E, Honorable Carry A. Baker, Presiding

July 29, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

From case numbers 07-21-00040-CV, 07-21-00041-CV, and 07-21-00042-CV, Mother appeals three final orders terminating her parental rights to five children: I.E., M.E., D.R., L.R., and H.T.-D. From case number 07-21-00040-CV, Father appeals the termination of his parental rights to I.E. and M.E.[1] Appellee is the Texas Department of

---

[1] To protect the children's privacy, we will refer to the mother of H.T.-D., L.R., D.R., I.E., and M.E. as "Mother"; the father of I.E. and M.E. as "Father"; and the children by initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(a), (b). The parental rights of L.D.'s and D.R.'s father, S.R., were also terminated, but he did not appeal that decision. H.T.-D.'s father, J.T.D., is deceased.

Family and Protective Services.  The cases were consolidated for a bench trial before the associate judge with settings during January and February 2021.

Mother's appellate counsel has filed a motion to withdraw from the representation, supported by an *Anders* brief.[2]  Father has filed an appellant's brief raising three issues. Agreeing with Mother's counsel that no arguable ground supports an appeal by Mother, we affirm the three final orders as they pertain to her and take no action on counsel's motion to withdraw.  Finding no merit to the issues necessary for disposition of Father's appeal, we affirm the final order terminating his parental rights to I.E. and M.E.

## Background

At final hearing, Department investigator Melody Zuniga testified that in January 2020 she was notified that then 15-year-old H.T.-D. made an outcry of sexual abuse against Mother and Father.  According to Zuniga, due to H.T.-D.'s "significant outcries of sexual abuse, and physical abuse," M.E., I.E., and L.R. were transported to The Bridge, a children's advocacy center, for interview.  Zuniga interviewed D.R. later because of "possible sexual interaction" between D.R. and M.E.

Following the interviews, the Department took exigent custody of I.E., M.E., L.R., and D.R., and placed them together.  Zuniga testified the exigent circumstances present included H.T.-D.'s outcries of sexual abuse by Mother and Father, alleged physical abuse toward D.R. and L.R., and a "significant amount of marijuana use" by Mother and Father.[3]

---

[2] *See Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] During her testimony, Department caseworker Tippi Watson echoed the Department's drug-use concern stating, "one of the reasons for removal was the continued drug use around the children."  In her opinion, drugs "were a large portion of the case."  She added, "The family has a history of extended drug

When notified that the children were being removed, Father became angry to the point that law enforcement was summoned. According to Zuniga, Mother appeared more emotional than angry.

Parents' alleged daily marijuana use, and the children's involvement

During Zuniga's investigation, L.R. allegedly told her that Mother and Father consumed marijuana on a daily basis. The parents brought the contraband to Texas from Colorado. Further, according to Zuniga's investigation, the children all knew where marijuana was kept in the family's home and had been instructed where it was to be hidden if law enforcement arrived. D.R. allegedly told Zuniga that Mother and Father frequently smoked marijuana and once smoked with H.T.-D.

Mother and Father allegedly told Watson at their first meeting that "technically marijuana is not an illegal drug, because it's not illegal according to the Federal Government," and that it was their right to smoke marijuana. During her testimony, Mother confirmed she, like L.R., told Zuniga about daily marijuana consumption and making monthly trips to Colorado to purchase it. Watson said Mother admitted to having used marijuana in June 2020, months after the children were removed. Mother agreed on the stand that smoking marijuana was a problem.

When Watson asked Father why he used marijuana, he allegedly told her he did not like people and that smoking it kept him from killing people. However, at trial, Father

_____

use. They have a history of relapse. Once the Department is out of the case, they go back to using marijuana."

3

refused to answer whether he had smoked marijuana, interposing his privilege against self-incrimination.

Alleged sexual abuse of H.T.-D. and L.R.

H.T.-D.'s counselor, Lynn Jennings, testified about what she learned about H.T.-D. over the course of seventeen counseling sessions. Jennings testified H.T.-D. had recounted that Mother began touching the child's "private areas" when H.T.-D. was age thirteen. H.T.-D. said she lost count of the number of sexual contacts by Mother.

In addition, when H.T.-D. was fourteen, Father allegedly began "messing with" her. The episode is said to have begun with "inappropriate touching" and escalated to penile penetration; it occurred "more than one time." According to Jennings, H.T.-D. told her that Mother and Father instructed her not to report their sexual conduct with her.

In Jennings' opinion, H.T.-D. exhibited self-esteem issues when discussing the sexual abuse. The child hung her head, did not make appropriate eye contact, made jokes, and cried. Without objection, Jennings was more than once asked whether she believed H.T.-D.'s reports were truthful. Jennings responded to one inquiry by opining, "based off of her demeanor, her words, her physiological responses when we're discussing things, it is completely consistent and congruent with a child who has been sexually assaulted."

Other evidence supported Jennings' testimony. After she was removed, H.T.-D. initially lived with her father, J.T.D., until his death. Zuniga testified from her interview with J.T.D. that H.T.-D. told him "the abuse had been ongoing, and more frequent, and

4

the last time had been a week prior" to January 11, 2020. Zuniga further testified a sexual assault examination revealed healed tears to H.T.-D.'s hymen.

Mother denied sexually abusing H.T.-D., but attempted to name men who did; she did not name Father. When asked if he sexually abused H.T.-D., Father interposed his Fifth Amendment privilege against self-incrimination.[4]

The evidence of sexual abuse was not limited to H.T.-D. Before the first setting of final hearing, L.R. made an outcry to a Department courtesy worker that Father engaged in sexually inappropriate conduct toward her. On an occasion when L.R. was age five, Father allegedly spanked H.T.-D. and L.R. after removing them from the shower. He also allegedly touched her "private chest area, like her breast area" as Father picked her up; the occurrence made L.R. feel very uncomfortable.

At another time, Father allegedly grabbed L.R.'s waist while she was unclothed; Mother told him to stop. L.R. also allegedly told Jennings, with whom she had seventeen counseling sessions, that when she was age seven, she awoke to find Father trying to remove her shirt. Mother pulled L.R. away from Father.

When age eight, L.R. claims Father told her to remove her pants and forced her to the floor. L.R. refused and H.T.-D. began screaming; the occurrence ended when Mother entered the room. L.R. allegedly told Jennings that on yet another occasion, Father tied

---

[4] In a civil case, the factfinder may draw negative inferences from a party's assertion of the privilege against self-incrimination. *In re T.B.,* No. 07-12-00538-CV, 2013 Tex. App. LEXIS 6728, at *7-8 (Tex. App.—Amarillo May 31, 2013, no pet.) (mem. op.); TEX. R. EVID. 513(c).

5

L.R.'s hands behind her back, removed her pants but not her underwear, and attempted to remove her shirt, only to be interrupted by Mother or H.T.-D.

Jennings reported from her interviews with L.R. that these events occurred "more than three times." In Jennings' opinion, Father's conduct toward L.R. was "a grooming process."

In addition to this evidence, documents received in evidence included November 2020 indictments charging Mother and Father with two counts each of sexually assaulting[5] H.T.-D., as well as one count of aggravated sexual assault of a child against Mother.[6] During the pendency of the Department's cases, Mother and Father were arrested for the indicted offenses, and released on bail. A condition of their bail bond, Watson testified, prohibited contact with any child under age seventeen.

Parents' alleged physical abuse directed at the children

Evidence at trial also described multiple examples of alleged physical abuse directed at the children, primarily D.R., H.T.-D., and L.R. As an example, the children told numerous testifying witnesses that Father picked up D.R. by grabbing the child underneath his chin near his esophagus. Mother said Father grabbed D.R. by a "pressure point" to obtain his attention. Mother thought this was an acceptable method for preventing harm to self or others because D.R. is thought to be a special needs child.[7]

---

[5] *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (West Supp. 2020).

[6] *See* TEX. PENAL CODE ANN. § 22.021(2)(B) (West 2019).

[7] Mother testified 12-year-old D.R. is "on the borderline of Autism," suffers from Oppositional Defiance Disorder, Attention Deficit Hyperactivity Disorder, and two other diagnoses she could not recall.

6

According to the testimony at trial from interviews with multiple children, Mother and Father also often hit the children with a belt. Zuniga described the frequency of the hitting that took place: "If something was done that was not approved of by [Mother] or [Father], they [the children] were getting hit."

H.T.-D. allegedly reported both parents, but primarily Father, hit her, L.R., and D.R. with a leather belt on the children's lower backs and thighs. Mother was aware of Father's using the belt and testified Father "took discipline too far." Jennings testified Father beat L.R. with a leather belt, leaving red and purple marks. Zuniga also said L.R. described an occasion where Father bent the child over a couch and began hitting her with a belt. Zuniga said that when Mother saw bruising caused by Father, she commented that L.R. deserved the result.

Jennings reported H.T.-D. told her, "[Mother] and [Father] beat them pretty regularly." It is somewhat unclear from this testimony, however, what conduct was characterized as "beating." H.T.-D. also allegedly told Jennings that Mother "head-butted" L.R. and D.R.

The Department expressed concern that such contact was harming the children physically and emotionally and risked future consequences. The family service plan observed, "[D.R.] receives the bulk of the physical abuse and is often the scapegoat for the family dysfunction." The other children have "expressed concern for how frequently he was hit, pinched and physically abused." The plan also said:

---

At the time of final hearing, D.R. had been placed in a residential treatment center in another city. Per Watson, this was the child's fifth placement during the pendency of the case.

7

Specifically of concern is the physical abuse [to D.R.] that is being reported by the children * * *. Physical abuse can lead to severe psychological trauma which can impair not only [D.R.'s] emotional development, but his siblings as well in the form of secondary trauma. The children are at risk for significant physical harm, emotional harm and even death.

Jennings opined there also existed "definite indicators" that L.R. was emotionally and physically abused.

Children's progress since the time of removal

According to Zuniga, each child has done well during their placement. Via final orders, the trial court terminated Mother's parental rights to H.T.-D., L.R., D.R., M.E., and I.E. after making findings under Family Code section 161.001(b)(1), predicate grounds (D), (E), and (O), and that termination was in the children's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(O) and (2) (West Supp. 2020). The trial court also terminated Father's parental rights to M.E. and I.E. after making affirmative findings under predicate grounds (E) and (O), and a best interest finding. TEX. FAM. CODE ANN. § 161.001(b)(1)(E),(O) and (2). These appeals followed.

**Analysis**

Per the Texas Family Code, predicate ground (D) provides for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Predicate ground (D) looks at the child's living environment. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). This includes evidence regarding the suitability of the child's living conditions. *In re S.R.,* 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014,

8

pet. denied). The assessment looks at a parent's conduct in the home. *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). We recently articulated application of the standard:

> It is not necessary that the children's living environment directly threaten the children or that the children be injured, but the parent must at least be aware of the potential for danger to the children in such an environment and must have disregarded that risk. Illegal drug use and criminal activity support a conclusion that the children's surroundings endanger their physical or emotional well-being.

*In re A.L.G.*, No. 07-21-00020-CV, 2021 Tex. App. LEXIS 4871, at *17 (Tex. App.—Amarillo Jun. 17, 2021, no pet. h.) (mem. op.) (citations omitted).

The evidentiary focus is upon the child's living environment as it existed prior to removal by the Department. *In re C.R.,* Nos. 07-20-00314-CV, 07-20-00316-CV, 2021 Tex. App. LEXIS 1286, at *6 (Tex. App.—Amarillo Feb. 23, 2021, no pet.) (mem. op.). When coupled with a best-interest finding, termination of the parent-child relationship may be based on a single act or omission violating predicate ground (D). *In re M.D.M.,* 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Predicate ground (E) permits termination of rights when the parent engages in conduct or knowingly places the child with persons who engage in conduct which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Predicate ground (E) requires more than a single act or omission, though, again, the cause of the danger to the child may be shown by the parent's actions, including any failure to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied); *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). The focus under predicate ground (E) is

exclusively on the parent's conduct. *In re N.R.,* 101 S.W.3d 771, 776 (Tex. App.—Texarkana 2003, no pet.). "To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the children nor are the children required to actually suffer injury." *In re A.L.G.*, 2021 Tex. App. LEXIS 4871, at *18. Because a parent's use of an illegal drug exposes a child to the possibility that the parent may be impaired or imprisoned, proof of illegal drug use may serve as grounds to support termination under predicate ground (E). *In re J.L.C.,* 582 S.W.3d 421, 431 (Tex. App.—Amarillo 2018, pet. denied).

The standard for reviewing the evidence is described in *In re D.R.C.,* No. 07-19-00428-CV, 2020 Tex. App. LEXIS 2524, at *4-5 (Tex. App.—Amarillo Mar. 25, 2020, pet. denied) (mem. op.), and needs no further elaboration here. The term "endanger," as referenced by predicate grounds (D) and (E), means to expose to loss or injury; to jeopardize. *In re R.H.,* No. 06-20-00083-CV, 2021 Tex. App. LEXIS 3311, at *22 (Tex. App.—Texarkana Apr. 30, 2021, no pet.) (mem. op.).

**Mother's Appeal**

Counsel's *Anders* brief presents a professional evaluation of the record supporting his opinion there are no arguable grounds for Mother's appeal of the final orders in case numbers 07-21-00040-CV, 07-21-00041-CV, and 07-21-00042-CV. *See Anders,* 386 U.S. at 744-45. We find that counsel's motion to withdraw and brief meet the requirements of *Anders*. Counsel also showed he provided Mother a copy of his motion to withdraw, brief, and the record, and notified Mother of her right to file a pro se response if desired. *Kelly v. State,* 436 S.W.3d 313, 319 (Tex. Crim. App. 2014). By letter from the

10

Clerk of this Court, Mother was notified of her opportunity to respond to counsel's brief. Mother filed a lengthy pro se response.[8] After considering the record, counsel's *Anders* brief, and the permissible portion of Mother's pro se response, we agree with counsel that no arguable ground for appeal is shown. *In re K.R.C.,* 346 S.W.3d 618, 619 (Tex. App.—El Paso 2009, no pet.).

Although counsel for Mother argues, "there are no non-frivolous grounds for [her] appeal," we nevertheless conduct a review of the evidence relevant to the trial court's findings that Mother violated predicate grounds (D) and (E) in each case. *See In re L.G.,* 596 S.W.3d 778, 781 (Tex. 2020) (per curiam) (requiring appellate court to detail analysis of challenged (D) and (E) ground findings even when judgment is affirmed on other grounds); *In re B.F.,* No. 07-20-00349-CV, 2021 Tex. App. LEXIS 3319, at *2-3 (Tex. App.—Amarillo Apr. 30, 2021, no pet.) (per curiam, mem. op.) (conducting independent evidentiary sufficiency review in appeal involving *Anders* brief).

Given the evidence, which we view in the light most favorable to the trial court's finding, we conclude the evidence is sufficient to support a firm belief or conviction that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children. TEX. FAM. CODE. ANN. § 161.001(b)(1)(D). We further conclude the evidence is sufficient that the trial court could have held a firm belief or conviction that Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered

---

[8] Mother's response includes arguments and numerous attached exhibits from outside the record. We are, however, prohibited from considering matters not included in the appellate record. *In re M.M.,* No. 07-13-00175-CV, 2013 Tex. App. LEXIS 12263, at *3 (Tex. App.—Amarillo Sep. 30, 2013, no pet.) (mem. op.).

11

the physical or emotional well-being of the children. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). And, viewing the evidence in a neutral light, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother committed acts and omissions that satisfy predicate grounds (D) and (E).

The evidence supporting termination of Mother's parental rights, viewed in a light most favorable to the judgment, includes, but is not limited to, the following:

- Mother's daily consumption of marijuana in the children's home;

- Mother's storage of marijuana in the children's home;

- Mother's instructions to the children of where to hide the marijuana if law enforcement arrives;

- Mother's smoking marijuana with H.T.-D., a child;

- Mother's repeated instances of sexual abuse of H.T.-D.;

- Evidence that Mother knew of Father's acts of sexual abuse of L.R. or efforts to "groom" L.R. for future sexual abuse, but allowing Father to remain in the home with the children;

- Evidence that Mother knew Father had picked up D.R. by the neck to obtain D.R.'s attention, but allowing Father to remain in the home with the children;

- Mother's "regular" instances of "beating" the children;

- Evidence that Mother knew Father's hitting the children "took discipline too far," but allowing Father to remain in the home with the children;

- Mother's physical "abuse" of D.R. and L.R.;

- Mother's acts and omissions endangering the physical and emotional well-being of the children; and

- Termination of Mother's parental rights is in the children's best interest.

12

Accordingly, the trial court's final orders terminating Mother's parental rights in case numbers 07-21-00040-CV (*In re I.E. and M.E.*), 07-21-00041-CV (*In re L.R. and D.R.*), and 07-21-00042-CV (*In re H.T.-D.*) are affirmed. We take no action on counsel's motion to withdraw, from representation in each case but call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include filing a petition for review in the Supreme Court of Texas. *In re P.M.,* 520 S.W.3d 24, 27 (Tex. 2016) (per curiam).

## Father's Appeal: Sufficiency of Evidence

We next review Father's arguments as to children I.E. and M.E. in light of the evidence discussed above, as well as the evidence detailed herein regarding these two children. I.E. is the nine-year-old son of Mother and Father; M.E. is their eight-year-old daughter. We disagree with Father's argument that the predicate ground (E) finding is not supported by legally or factually sufficient evidence.

We begin our discussion of the evidence of Father's acts and omissions:

- Father's daily consumption of marijuana in the children's home;

- Father's justification of consuming marijuana because it kept him from killing people;

- Father's storage of marijuana in the children's home;

- Father's instructions to the children of where to hide the marijuana if law enforcement arrives;

- Father's smoking marijuana with H.T.-D., a child;

- Father's repeated instances of sexual abuse of H.T.-D.;

- Father's efforts to "groom" L.R. for future sexual abuse;

13

- Evidence that Father knew of Mother's acts of physical and sexual abuse, but allowing Mother to remain in the home with the children;

- Picking up D.R. by the neck to obtain D.R.'s attention;

- Father's "regular" instances of "beating" the children;

- Father's physical "abuse" of D.R. and L.R.;

- Father's acts and omissions endangering the physical and emotional well-being of the children; and

- Termination of Father's parental rights is in the children's best interest.

Zuniga testified that I.E. made no allegation of abuse or neglect when interviewed at The Bridge. However, I.E. did describe the abuse of H.T.-D, L.R., and D.R., as well as his parents' drug use. I.E. also once observed a bruise on D.R.'s back and related that D.R. "would get hit" when Father was angry with him. Watson testified that I.E. and M.E. said they did not want to live with Mother and Father because of the way the other children were treated.

Jennings had twenty-two counseling sessions with M.E., and Zuniga met with the child, as well. Again, as with I.E., M.E. related she was not physically abused or "beat" like the other children.[9] She observed D.R.'s "marks and bruises" and knew Father beat D.R. with a belt and a paddle. M.E. reported to Jennings she "felt badly because she watched her other siblings get hurt."

Zuniga testified M.E. talked of going to Colorado to acquire marijuana and hiding it in the couch. M.E. described the marijuana "as smelling really bad" and explained that the children were only allowed to touch the marijuana if it had to be hidden. Like, I.E.,

---

[9] M.E. used the term "beat" to mean hit or slapped.

14

M.E. expressed concern about living with Mother and Father; according to Jennings, M.E. had a "freak out moment" when she mistakenly believed Mother and Father were going to remove the children from foster placement.

Father argues "because there is no evidence of abuse or neglect perpetrated on I.E. and M.E., there is no basis for termination under" predicate ground (E). We disagree that the Family Code provision is read so restrictively. The evidence detailed earlier in this opinion shows how all the children, including I.E. and M.E., were subjected to a living environment and parental conduct that included (1) sexual assault of at least one child by Mother and Father; (2) extreme punishment of three of the children; and (3) illegal drug use by both parents for which all children were expected to assist.

Though the term "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). *See also In re J.F.-G.,* No. 20-0378*,* 2021 Tex. LEXIS 413, at *12-13 (Tex. May 21, 2021) ("Endangering conduct under subsection (E) need not be directed at the child. Nor must the child actually suffer injury."). Acts of violence or abuse directed toward one child can endanger other children that are not the direct victims of the conduct and support termination of parental rights of the other children. *In re Baby Boy R.,* 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied) (stating in conjunction with predicate ground (E) finding, "a parent's conduct toward a stepchild will suffice to support termination of another child, even if that conduct did not occur in the child's presence," and inferring from a father's guilty plea of aggravated sexual assault of his stepdaughter that he "engaged in conduct that will

15

endanger or jeopardize the physical or emotional well-being of other children in the home who may discover the abuse or be abused themselves."). *See In re L.W.,* No. 01-18-01025-CV, 2019 Tex. App. LEXIS 2825, at *34-35 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.); *In re K.S.,* No. 02-14-00073-CV, 2014 Tex. App. LEXIS 8693, at *24-27 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.); *In re K.W.,* No. 02-09-00041-CV, 2010 Tex. App. LEXIS 291, at *18-23 (Tex. App.—Fort Worth Jan. 14, 2010, no pet.) (mem. op.) (holding that mother's drug use supported endangerment findings against alleged father under predicate grounds (D) and (E)).

That M.E. and I.E. were fortunate enough to not physically experience the abusive acts suffered by their step-siblings does not mean they were not endangered. Evidence of conduct endangering a child's emotional well-being is equally as important. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The evidence here shows that both I.E. and M.E. observed the effects of Father's physical abuse directed at D.R. and other children in the home. The family service plan points out that abuse to D.R. can impair the other children in the form of secondary trauma. In fact, I.E. and M.E. were affected to the point that they no longer wanted to live with their parents. *In re B.J.B.,* 546 S.W.2d 674, 677 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.) (concerning predicate ground (E), "[i]t is not mandated therein that the children observe[] the conduct.").

As additional support, the record capably demonstrates the centrality of marijuana in the lives of Mother and Father. Father and Mother daily consumed the drug, expressed disregard for prohibitive law, and willingly involved the children in its unlawful possession and concealment. The evidence shows Mother and Father consumed marijuana with one of I.E.'s and M.E.'s siblings. The evidence sufficiently supports a conclusion that this

16

illegal-drug-related conduct created or allowed an environment that endangered the physical or emotional well-being of the children and amounted to a course of conduct that endangered the physical or emotional well-being of the children. *See In re S.S.*, No. 07-19-00309-CV, 2020 Tex. App. LEXIS 1095, at *11-12 (Tex. App.—Amarillo 2020, pet. denied) (mem. op.) (upholding termination of parental rights under predicate grounds (D) and (E): "Many courts have noted that a parent's ongoing drug use is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child.").

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the trial court could have formed a firm belief or conviction that Father engaged, or knowingly placed I.E. and M.E with persons who engaged, in conduct that endangered their physical and emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). And, viewing the evidence in a neutral light, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Father engaged in conduct, or knowingly placed I.E. and M.E with persons who engaged in conduct that endangered the physical and emotional well-being of the children. *See id.* Father's issue is overruled.

Our affirmance of the termination of Father's parental rights pretermits Father's challenge to the evidence supporting the trial court's predicate ground (O) finding.[10]

---

[10] "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) (citations omitted); *In re J.F.-G.,* 2021 Tex. LEXIS 413, at *12 (citing *In re A.V.*); *see* Tex. R. App. P. 47.1.

17

**Father's Appeal: Refusal to grant a continuance**

Relying on Family Code section 161.2011(a), Father also argues the trial court reversibly erred by failing to continue the Department's case against him until his criminal charges are resolved. We overrule his issue.

Three days before the first day of final hearing, Mother filed a "Motion to Retain Suit on the Court's Docket and Set New Dismissal Date," per Family Code section 263.401(a). In arguing the motion, Mother's counsel pointed to such necessitating factors as the COVID-19 pandemic's effect on her communications with Mother and her need to follow up on some unspecified information. Father's counsel made reference to pending criminal charges and concluded, "I have no objection to her getting a little more time to prepare." The trial court verbally denied Mother's motion, noting the criminal matters would not likely be resolved within the succeeding six months.

We hold that the statements by Father's counsel did not join Mother's motion to retain or put the trial court on notice that Father was seeking a continuance under Family Code section 161.2011(a). A trial court's ruling on a motion for continuance will not be disturbed unless the trial court clearly abused its discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex. 2002) (citing *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986)). A trial court abuses its discretion when its ruling is arbitrary or unreasonable and without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

Texas Rule of Civil Procedure 251 provides, "No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted

18

except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Rule 251 applies to motions filed under section 161.2011(a). *In re A.H.,* No. 02-17-00222-CV, 2017 Tex. App. LEXIS 10544, at *32 (Tex. App.—Fort Worth Nov. 9, 2017, pet. denied) (mem. op.). Therefore, Father was required to file an affidavit stating sufficient cause for a continuance. *In re J.S.,* No. 12-15-00053-CV, 2015 Tex. App. LEXIS 8421, at *2-3 (Tex. App.—Tyler Aug. 12, 2015, no pet.) (mem. op.). He failed to do so. Generally, when a motion for continuance is not supported by affidavit, an appellate court must presume the trial court did not abuse its discretion in denying the motion. *In re J.L.T.,* No. 07-18-00340-CV, 2018 Tex. App. LEXIS 10888, at *5-6 (Tex. App.—Amarillo Dec. 28, 2018, pet. denied) (mem. op.).

We further disagree that Father joined in Mother's motion to retain and find nothing in the record to indicate Mother's request was brought pursuant to section 161.2011(a); the section was not even mentioned. However, to the extent such a request could have been inferred, the trial court properly exercised discretion in finding the best interest of the children required the hearing to proceed. *See id.* (permitting a continuance "only if the court finds that a continuance is in the best interest of the child.").

We conclude the record does not show the trial court abused its discretion by failing to grant Father a continuance under section 161.2011(a).[11] Father's issue is overruled.

---

[11] Moreover, Father did not brief an argument of error based on failure to grant an extension of time under Family Code section 263.401. Even if he intended such a claim, however, our conclusion would remain; the trial court did not err by proceeding with final hearing.

**Conclusion**

We affirm the final orders of the trial court in 07-21-00040-CV, 07-21-00041-CV, and 07-21-00042-CV.


                                        Lawrence M. Doss
                                            Justice