

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00365-CV

## IN THE INTEREST OF H.N.J., J.M.S., J.A.R., J.A.R., AND J.R., CHILDREN

### From the County Court at Law No. 1
### Johnson County, Texas
### Trial Court No. D200800157

## MEMORANDUM OPINION

Jesse R. appeals from a judgment terminating his parental rights to his children, J.A.R., J.A.R., and J.R. Jesse complains that section 263.405 is unconstitutional as applied to him and that the evidence was legally and factually insufficient to terminate his parental rights. We affirm.

### *CONSTITUTIONALITY OF SECTION 263.405*

Jesse complains that section 263.405 of the Texas Family Code is unconstitutional as applied to him because his appellate counsel was not appointed until after the deadline for filing the statement of points had passed. His appellate counsel filed a statement of points and motion for extension of time pursuant to rule 5 of the Texas

Rules of Civil Procedure, which the trial court granted. Neither party challenges the propriety of the trial court's allowance of the statement of points. Additionally, Jesse does not raise any issue that he has been precluded from making to this Court.

Jesse has not shown what harm he suffered as a result of the statute's operation. Jesse's appeal was determined not to be frivolous and he was provided a copy of the entire record for purposes of appeal. Jesse has not identified any issue that he would have raised if counsel had been appointed sooner and that was not included in his statement of points on appeal. Without a showing of harm, we cannot review the constitutionality of a statute. *See In re D.J.R.*, 319 S.W.3d 759, 765-66 (Tex. App.—El Paso 2010, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 620, 625 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We overrule issue one.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Jesse complains that the evidence was legally and factually insufficient to terminate his parental rights because the evidence was insufficient to establish abuse or neglect directed toward J.A.R., J.A.R., or J.R. and there was insufficient evidence to prove that termination was in the best interest of the children. The trial court found that Jesse had committed the acts in section 161.001(1)(D) & (E) and that termination was in the best interest of the children.

### Standard of Review

Grounds for termination must be established by clear and convincing evidence. This requires a degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM.

CODE ANN. § 101.007 (Vernon 2008). There is a strong presumption that it is in the child's best interest to remain with the natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In doing so, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*.

In a factual sufficiency review, we must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *Id*. We must determine whether the evidence is such that the factfinder could reasonably have formed a firm belief or conviction regarding the allegations. *Id*. We must also consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id*. To determine if the evidence is factually sufficient, we give due deference to the trial court's findings and determine whether, on the entire record, the trial court could reasonably form a firm conviction or belief that the parent committed an act that would support termination and that termination of the parent's parental rights would be in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

Only one ground of termination is necessary for a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

*Section 161.001(1)(E)*

Section 161.001(1)(E) of the Texas Family Code requires clear and convincing proof that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E) (West 2008). This section refers not only to the parent's acts, but also to the parent's omissions or failures to act. *In re J.A.*, 109 S.W.3d 869, 875 (Tex. App.—Dallas 2003, pet. denied). Endanger means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Although endanger means more than a threat of physical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Id*. The Department need not establish the specific danger to the child's well-being as an independent proposition; the danger may be inferred from parental misconduct. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.).

*Factual Background*

The Department became involved with the family due to an allegation that Jesse had slapped and pushed H.N.S., Jesse's five year old step-child.[1] The investigation

---

[1] The mother of all five children, Melissa, resided in the home with Jesse and the children at the time of the removal. Melissa signed a voluntary affidavit of relinquishment and her parental rights had been already terminated at the time of the final hearing pursuant to an order of termination.

established that H.N.S., who was not the biological child of Jesse, was forced to live in an unventilated, unlit closet measuring approximately six feet by eight feet whenever Jesse was home. There was only a small baby blanket for bedding, one plastic chair, a laundry basket with dirty clothes that reeked of urine, carpet that was filthy and smelled of urine, and an empty bottle. A bookshelf would be pushed up against the closet door in order to keep H.N.S. in the closet. Additionally, H.N.S. was covered in ant bites that she had received while in the closet, she was forced to urinate in the bottle located in the closet, and was forced to stand up while eating. She was very dirty as well.

A second step-child of Jesse's, J.M.S., knew that H.M.S. was sent to the closet and showed the investigators the space and the bottle in which H.M.S. would urinate in the closet. J.M.S. was approximately a year younger than H.M.S. The children were removed from the home and initially placed pursuant to a safety plan with the maternal grandmother. This placement was terminated after H.M.S. was bruised by the maternal grandmother while being spanked with a belt, in violation of the Department's policies against physical discipline. The children were then placed with the paternal grandparents pursuant to another safety plan; however, that placement was terminated when it was discovered that the paternal grandmother allowed unsupervised access to the children by the parents, used physical discipline on H.M.S., and allowed their son who was a registered sex offender into their home with the children present.

Jesse contends that the Department was required to establish that each of the children were abused or neglected in order to terminate his rights. However, Jesse

provides no authority to support this contention. At trial and on appeal, his argument against termination was that while he did abuse another child in the home, he would never have treated his biological children in the same manner.

However, the manner in which a parent treats other children in the family can be considered in deciding whether that parent engaged in a course of conduct that endangered the physical or emotional well-being of a child. *Cervantes-Peterson v. Tex. Dep't. of Family and Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A number of courts of appeals, including this one, have also held that evidence of a parent's endangering conduct toward other children or family members is relevant to a determination of whether the parent engaged in behavior that endangered the child subject of the suit. *See, e.g., In re D.L.N.*, 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet. denied) *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002) and *In re C.H.*, 89 S.W.3d at 26 (holding that a parent's neglect of older children could indicate that the child the subject of the suit "would face this type of treatment in the future if returned" to the parent); *In re Baby Boy R.*, 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied) (holding that a parent's guilty plea of aggravated sexual assault of his step-daughter was evidence of conduct endangering to the well-being of his unborn child); *In re W.J.H.*, 111 S.W.3d 707, 716 (Tex. App.—Fort Worth 2003, pet. denied) (holding that abusive conduct toward other children "can be used to support a finding of endangerment even against a child who was not yet born."). Thus, any abusive or neglectful conduct by Jesse toward J.A.R., J.A.R., and J.R.'s older sibling,

H.N.S., is relevant in an inquiry to determine whether Jesse's parental rights to the children should be terminated under section 161.001(1)(E).

There was testimony from caseworkers at the Department that there was a likelihood that all of the children were at risk for future abuse similar to that which H.N.S. suffered because the younger children were beginning to show the same behaviors which led to Jesse's frustration with H.N.S. At the time of the trial, Jesse was incarcerated because he had pled guilty to endangering a child for the egregious treatment of H.N.S. Jesse further testified that he had an anger problem, which he contended was addressed through an anger management course he took while in prison.

There was conflicting testimony regarding whether Jesse's biological children were aware of the abuse perpetrated against H.N.S. However, H.N.S.'s next older sibling, J.M.S., who was also not Jesse's biological child, was fully aware of the treatment of H.N.S. and that it was used as punishment by Jesse. While in foster care, J.M.S. would state that H.N.S. needed to go to the closet when she was in trouble. J.A.R. and J.A.R. were in the home during some of the time during the abuse, and although it appears that they were very young, there was testimony that they may have been able to perceive to some extent the trauma suffered by H.S.N. due to Jesse's cruel treatment. J.R. was born in the weeks prior to the removal of the children and thus, not presently affected.

Further, Jesse was serving a twenty-four month sentence in the state jail for the endangerment charge, but additionally a ten year community supervision for felony

DWI he was serving was revoked and he was sentenced to eight years in prison for that offense. That sentence was being served concurrently with the endangerment sentence, and Jesse expected to be released on parole almost immediately after the termination hearing. Until the time of his release, he intended to place the children with his parents, from whom the children had previously been removed.

Using the appropriate standards as set forth above, we find that the evidence was both legally and factually sufficient for the trial court to have determined that Jesse engaged in a course of conduct that endangered the physical or emotional well-being of the children.

*Best Interest of the Children*

To terminate the parent-child relationship, the trial court must also find that termination is in the best interest of the children. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). When reviewing the sufficiency of the best-interest evidence, we apply the nonexclusive factors found in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include (1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the children, (6) the plans for the children by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or

omissions of the parents. *Id.* The Department need not prove all of these factors. *In re C.H.*, 89 S.W.3d at 27. In an appropriate case, proof of just one factor may be sufficient. *Id.*

Jesse contends that the evidence before the trial court consisted almost entirely of contradictory opinions regarding the best interest of the children; however, he does not explain what those contradictions were. The testimony from each of the witnesses except for Jesse was that termination was in the best interest of the children.

Jesse further contends that the basis for the opinions regarding best interest was his lack of participation in services which was impossible due to his incarceration. However, Jesse was able to and did participate in some services prior to his incarceration, including therapy. His therapist had reported while they discussed appropriate parenting skills, Jesse did not demonstrate those skills during scheduled visits with the children while they were voluntarily placed outside the home. During that time, the therapist had serious concerns about Jesse's ability to apply good parenting skills, even after taking parenting classes and participating in therapy.

The Department's witnesses stated that they believed that there was a significant risk that Jesse would abuse or neglect the children if returned to him. He intended to place the children with his parents who were allowing a registered sex offender to have contact with the children. Jesse proffered no witnesses on his behalf other than himself to counter the Department's contentions, and the trial court may have found his testimony to be incredible.

The Department's witnesses also testified that the children were "absolutely" adoptable due to their young ages and that adoption was their permanency plan as soon as possible.

Using the appropriate standards, we find that the evidence was legally and factually sufficient to support the trial court's finding that the termination of the parent-child relationship was in the best interest of the children. We overrule issue two.

*CONCLUSION*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed July 13, 2011
[CV06]