**AFFIRM IN PART; REVERSE AND RENDER IN PART; REVERSE AND REMAND IN PART; Opinion Filed April 28, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-19-01333-CV**

**IN THE INTEREST OF J.A. & N.A., CHILDREN**

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-17-1156-X**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Whitehill, and Justice Schenck
Opinion by Justice Schenck

Mother and Father separately appeal the termination of Mother's parental rights to children J.A. and N.A. and Father's parental rights to N.A.[1]  For the reasons discussed below, we affirm the trial court's termination of Mother's parental rights to J.A. and N.A. and reverse the trial court's termination of Father's parental rights to N.A.  Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

---

[1] Father is the father of N.A. but not of J.A.  No one alleged to be J.A.'s father filed a notice of appeal.

## BACKGROUND

In March 2012, J.A. was born. In October 2017, the Department of Family and Protective Services (the "Department") received a report that J.A. had severe eczema that had not been treated by a physician.[2] An investigator from the Department went to Mother's home and ruled out medical neglect, but determined there was neglectful supervision in the home because the home was unsanitary, rodents were present in the home, and there was alleged use of marijuana in front of J.A. When questioned regarding placement options, Mother wrote down the name of J.A.'s maternal aunt D.M., but added, "I'll go take him tonight when you leave." The Department ruled out placing J.A. with his maternal grandmother T.N. because of her own "very lengthy" history with the Department, which included seven of her eight children having been removed from her care.

In November 2017, the Department filed a petition for the protection of a child, conservatorship, and termination in suit affecting the parent–child relationship related to J.A.[3] The Department was granted temporary managing conservatorship of J.A. and placed him in foster care. The Department conducted home studies on

---

[2] This information came from an initial report to the court filed by the Department. Although this report was not later admitted as evidence at trial, we may presume the trial court took judicial notice of its own files, which include this report, the CASA reports, the temporary orders, and the kinship disposition and summary reports. *See In re A.B.*, No. 05-18-00649-CV, 2018 WL 4784578, at *4 (Tex. App.—Dallas Oct. 4, 2018, pet. denied) (mem. op.).

[3] The petition named alleged fathers of J.A. whose locations were unknown and none of whom were Father.

D.M., but denied those studies because of concerns regarding D.M.'s ongoing relationship with T.N., her health, and her financial ability to provide for J.A.

In March 2018, while incarcerated for aggravated assault with a deadly weapon, Mother gave birth to N.A. at approximately 32 weeks of gestation. The following month, the Department amended its petition to add N.A. The Department placed N.A. with the same foster family as J.A. In July 2018, Father filed an answer to the Department's petition and his own counter-petition seeking to adjudicate the parentage of N.A. and to obtain permanent managing conservatorship of N.A.

The case proceeded to trial, which took place over three days in April, June, and August of 2019. At trial, the following witnesses testified: the Department caseworker, the CASA advocate for both children, D.M., Mother's ex-cousin-in-law, Mother's guardian ad litem, Father, and the guardian ad litem for both children. The trial court later signed a decree of termination, which terminated Mother's parental rights to J.A. and N.A.[4] as well as Father's parental rights to N.A.[5] and

---

[4] The trial court terminated Mother's parental rights to J.A. and N.A. pursuant to sections 161.001(b)(D), (E), and (O) of the family code. Section 161.001(b)(1)(D) allows for termination if the parent knowingly allowed the child to remain in conditions or surroundings which endanger the physical and emotional wellbeing of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination if the parent engaged in conduct which endangers the physical and emotional well-being of the child. *Id.* § 161.001(b)(1)(E). Section 161.001(b)(1)(O) allows for termination if the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. *Id.* § 161.001(b)(1)(O).

[5] The trial court terminated Father's parental rights to N.A. pursuant to section 161.001(b)(E). FAM. § 161.001(b)(1)(E).

appointed the Department permanent managing conservator of both children.[6] Mother and Father filed separate notices of appeal.

## DISCUSSION

### I. Mother

Mother's attorney filed a brief, concluding her appeal is without merit and frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re D.D.*, 279 S.W.3d 849, 849–50 (Tex. App.—Dallas 2009, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). Counsel's brief states he served a copy of his brief on Mother, and, in an accompanying letter, informed Mother that she has a right to review the record and file a pro se brief if she desires to do so. In addition, this Court provided Mother with a copy of the *Anders* brief filed by her counsel and notified her of her right to file a pro se response. Mother did not file a pro se response and to date has not in any other way communicated with this Court.

Upon receiving an *Anders* brief, we are not required to review the merits of each claim raised in the brief or a *pro se* response. *See In re D.D.*, 279 S.W.3d at 850. Rather, our duty is to determine whether there are any arguable grounds for reversal and, if so, remand the case to the trial court so that new counsel may be appointed to address the issues. *See id.*

---

[6] The trial court's order also terminated the parental rights of an alleged father and unknown biological father to J.A.

The brief filed by Mother's counsel meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced on appeal. *See Anders*, 386 U.S. at 744; *In re D.D.*, 279 S.W.3d at 849–50. We independently reviewed the entire record and counsel's *Anders* brief, and we agree Mother's appeal is frivolous and without merit. We find nothing in the record that could arguably support the appeal.

Accordingly, we affirm the portion of the trial court's final decree terminating Mother's parental rights to J.A. and N.A.

## II. Father

### A. *Further Factual and Procedural Background*

At the time of trial, Father was employed as a barber. He met Mother while he was separated from his wife, and his relationship with Mother lasted approximately two years, ending when Mother was incarcerated in January 2018. Father testified it took several months before he noticed Mother had "problems," but stated what he noticed were "mood swings." He did not observe her being violent. Father testified he knew J.A. while he was in a relationship with Mother, but that J.A. did not live with him during the period Mother did, and thus he had little or no occasion to observe her parenting skills or lack thereof. He first met J.A. after he had been in a relationship with Mother for at least a year. When N.A. was born in March 2018, she remained in the hospital for two months before being placed in a foster care arrangement alongside J.A. According to the Department caseworker's

testimony, the Department considered placing N.A. with Father but did not because of his status as a registered sex offender, which was discovered by the Department's criminal background check and had not been disclosed by Father.

In July 2018, Father filed his answer and counter-petition, in which he sought several alternative forms of relief. Father first sought to be appointed managing conservator of N.A. Alternatively, he sought to be appointed joint managing conservator or possessory conservator with a maternal relative, paternal relative, or kinship placement. Father also sought, in the alternative, that the Department be appointed managing conservator and himself appointed as possessory conservator. Despite not having N.A. placed with him, Father visited N.A. once a week beginning in March 2019.

The following evidence established Father's criminal history. In 1998, when he was approximately twenty-one years old, Father had illegal sexual contact with a fourteen-year old. As a result of that conviction, Father was ultimately imprisoned for approximately four years and has a lifetime obligation to register as a sex offender. In 2005, Father was convicted for the misdemeanor offenses of driving with an invalid license and possession of less than two ounces of marijuana. In 2018, Father failed to change his address in violation of his obligations to register as a sex offender. Father stated that he was overwhelmed by two deaths in his immediate family and his reconciliation with his wife, which led him to forget to change his address. Father testified he was placed on community supervision for his failure to

report the change in his address. The Department's caseworker testified Father had tested positive for marijuana on two occasions. Father also admitted that he had used marijuana on another occasion two months before his testimony in August 2019. He testified that he had stopped smoking marijuana since then. Thus, viewed in the light most favorable to the judgment, Father's criminal conduct in this century consists of marijuana consumption, driving with an invalid license, and a failure to update his address.

At trial, Father testified he desired to take care of and be the father of N.A., and that his wife supported him in those desires. He was aware that N.A. had been diagnosed with RSV[7] and that his smoking could adversely affect her health, but Father testified he did not smoke around N.A. and that he was willing to stop smoking if N.A. were placed with him. Father testified he lived with his wife, sister-in-law, and brother-in-law, all of whom he affirmed knew of and were supportive of his attempts to have N.A. placed with him.

### B.    Termination of the Parent–Child Relationship

A court may terminate a parental relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)–

---

[7] Although not defined at trial, RSV is an acronym for respiratory syncytial virus, which is a respiratory virus that can be dangerous for premature and very young infants. *See* https://www.cdc.gov/rsv/high-risk/infants-young-children.html (last visited Apr. 27, 2020).

(2). Clear and convincing evidence is proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007.

Here, the trial court found the Department had proven by clear and convincing evidence that Father had "engaged in conduct which endangers the physical and emotional well-being of the child [N.A.] and has knowingly placed the child with persons who engaged in conduct which endangers the physical and emotional well-being of the child, pursuant to Section 161.001(b)(1)(E), Texas Family Code." The trial court also found that the termination of Father's parental rights to N.A. was in the best interest of the child. *Id.* § 161.001(b)(2).

On appeal, Father raises six issues. In his first and second issues, he argues the evidence is legally and factually insufficient to support the trial court's finding that his parental rights should be terminated pursuant to Section 161.001(b)(1)(E). In his third and fourth issues, he urges the evidence is legally and factually insufficient to support the finding that termination of his parental rights is in N.A.'s best interest. In his fifth issue, Father alleges he received ineffective assistance of counsel at trial. In his sixth and final issue, Father challenges the legal and factual sufficiency of the evidence to support the appointment of CPS as the managing conservator for N.A.

As noted, Father raises a number of legal and factual sufficiency issues. In reviewing the legal sufficiency of the evidence supporting an order terminating

parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a "firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* In a factual sufficiency review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In addition to challenging the trial court's finding pursuant to Section 161.001(b)(1)(E), Father challenges the trial court's finding that termination of his parental rights is in N.A.'s best interest. A strong presumption exists that the best interest of the child will be served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest.

FAM. § 263.307(a). Several statutory factors relevant to this appeal should be taken into account in evaluating a parent's willingness and ability to provide the child with a safe environment, including the child's age and vulnerabilities; results of psychological evaluations of the parents; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to complete counseling services and to cooperate with an agency's close supervision; and the willingness and ability of the child's family to effect positive and personal changes within a reasonable period of time. *Id.* § 263.307(b)(1), (6), (8), (10), (11).

In addition to these statutory factors, we look to other non-exclusive factors relevant to the best-interest determination, including (1) the child's desires, (2) the child's present and future emotional and physical needs, (3) the present and future emotional and physical danger to the child, (4) the parent's parental abilities, (5) the programs available to assist a parent to promote the child's best interest, (6) the parent's plans for the child, (7) the stability of the home, (8) the parent's acts or omissions that may indicate the parent–child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). A best-interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence that the parental relationship endangered the child's safety. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence of Section 161.001(b)(1) termination grounds may also be probative of a child's best interest. *See id.* at 28.

### C.      *Finding of Section 161.001(b)(1)(E)*

In his first issue, Father challenges the legal sufficiency of the evidence to support termination of his parental rights pursuant to Section 161.001(b)(1)(E). Looking at the evidence in the light most favorable to the judgment, the record contains the following evidence related to the trial court's finding that Father engaged in conduct or knowingly placed N.A. with persons who engaged in conduct which endangers the physical or emotional well-being of N.A.  *See* FAM. § 161.001(b)(1)(E); *In re J.F.C.*, 96 S.W.3d at 266.

Father's relationship with Mother ended when Mother was incarcerated in January 2018.  N.A. was born prematurely to Mother while she was incarcerated, and Father has never had custody of the child.  Further, there is no evidence Father knew of Mother's epilepsy and bipolar disorder, any of her prior history with the Department, or the living conditions of J.A.  According to Father, he noticed Mother had "mood swings," but he did not observe her being violent.  Accordingly, we conclude there is legally and factually insufficient evidence that Father placed N.A. with persons who engaged in conduct which endangers the physical or emotional well-being of N.A. and now turn to examine whether Father himself engaged in conduct which endangers the physical or emotional well-being of N.A.  In conducting this review, we examine evidence of the parent's acts—as well as any omissions or failures to act—both before and after the child was born.  *See In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied).

–11–

Here, the State relies on evidence that Father sexually assaulted another child twenty years prior to N.A.'s birth, his two positive drug tests for marijuana, and his failure to update his address. As noted above, in 1998, Father had illegal sexual contact with a fourteen-year-old, was charged with and judicially confessed to the offense, and was sentenced to incarceration and a lifetime obligation to register as a sex offender. Father tested positive for marijuana use twice during the pendency of this case, in May 2018 and in February 2019. Additionally, Father admitted at trial he had used marijuana approximately two months prior to that hearing. Father also failed to update his address as part of his requirements as a registered sex offender and thus was placed on community supervision.

As for the evidence of Father's illegal drug use, the record shows at least three instances of marijuana use during the pendency of this case. In two recent opinions from this Court, we held that such evidence is legally sufficient to support a finding pursuant to Section 161.001(b)(1)(E). *See In re D.C.*, No. 05-19-1217-CV, 2020 WL 1042692, at *10 (Tex. App.—Dallas Mar. 4, 2020, no pet. h.) (mem. op.); *In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. filed). In light of this controlling precedent, we must conclude the evidence of Father's illegal drug use is legally sufficient to support the trial court's termination of Father's parental rights pursuant to Section 161.001(b)(1)(E). We overrule Father's first issue.

In his second issue, Father challenges the factual sufficiency of the evidence to support termination of his parental rights pursuant to Section 161.001(b)(1)(E).

–12–

The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31. Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* at 631.

As noted above, Father does not dispute that he was convicted and judicially confessed to the offense of sexual assault of a child in 1998. It is beyond question that sexual abuse would be conduct that endangers a child's physical or emotional well-being and that the prospect of it may be taken into account as a general matter in any termination proceeding. *See In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.). Further, we note that a parent's conduct need not be directed at the child or that the child actually suffer an injury. *See In re A.R.M.*, No. 05-17-00539-CV, 2018 WL 1559820, at *2 (Tex. App.—Dallas Mar. 30, 2018, pet. denied). However, termination under subsection (E) must be based on a voluntary, deliberate, and conscious course of conduct by the parent; a single act or omission is not enough. *See id.* There is no other evidence of any sexual assault in the intervening decades since Father's sexual assault of a child in 1998, and thus, as reprehensible as it is, this ancient offense is a single act with no credible evidence to direct it to the parent–child relationship at issue here.

*Compare In re Baby Boy R.*, 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied) (holding evidence of father's guilty plea to aggravated sexual assault of his step-daughter three years before his infant son's birth sufficient to support finding father endangered infant son's physical or emotional well-being) *with In re C.E.K.*, 214 S.W.3d 492, 496 (Tex. App.—Dallas 2006, no pet.) ("In a termination suit, acts done in the distant past, without showing a present or future danger to a child, cannot be sufficient to terminate parental rights.").

Nor do we conclude the evidence of Father's failure to update his address to establish a voluntary, deliberate, or conscious course of conduct germane to the question of the parent–child relationship. Indeed, Father testified he forgot at a time when he was dealing with two deaths in his immediate and extended family and reconciling with his wife. As for the evidence of Father's drug use, we note that Father testified that he had stopped smoking marijuana since approximately two months prior to his testimony. As a prior panel determined, an offense of this nature is not a basis for a factually sufficient finding. *See In re C.V.L.*, 591 S.W.3d at 752.

We conclude the evidence is factually insufficient such that the factfinder could not have formed a firm belief or conviction that Father had engaged in conduct which endangers the physical and emotional well-being of N.A. pursuant to Section 161.001(b)(1)(E). *See In re A.C.*, 560 S.W.3d at 631. Accordingly, we sustain Father's second issue.

## D.    *Best Interest of N.A.*

In his third issue, Father challenges the trial court's finding that termination of his parental rights was in N.A.'s best interest. Even assuming the trial court did not err in finding Father had engaged in conduct or knowingly placed N.A. with persons who engaged in conduct which endangers the physical or emotional well-being of N.A., we conclude the evidence is legally insufficient to support the trial court's best-interest finding.[8]

### *N.A.'s Desires*

N.A. was just over one year old at the time of trial, so she was too young to have any relevant desires, and thus we view this *Holley* factor neutrally. *See In re G.A.L.*, No. 05-19-00844-CV, 2020 WL 582282, at *9 (Tex. App.—Dallas Feb. 6, 2020, no pet. h.) (mem. op.).

### *N.A.'s Physical and Emotional Needs*

There is evidence that N.A. has some special needs, including her premature birth, eczema, and RSV, as well as having required some occupational therapy. The only evidence that Father might not be able to meet these needs was the evidence that Father smoked. However, Father testified to his willingness to stop smoking if N.A. were placed with him, and it appears he has the support of family members who live with him.

---

[8] In light of our conclusion the evidence is legally insufficient to support the trial court's best-interest finding, we need not discuss whether the evidence is factually sufficient. *See* TEX. R. APP. P. 47.1.

As for N.A.'s ordinary physical needs, there was evidence that Father lived in a four-bedroom/three-bathroom house with his wife, sister-in-law, and brother-in-law, all of whom support his desire to have N.A. placed with him. The Department caseworker testified that during her visit of Father's home, she did not see that he had made any arrangements, such as a bedroom, for receiving N.A., but described it as "a good home." According to Father and the guardian ad litem appointed for both children, at the time of trial, Father had furniture and a car seat ready for N.A. should she be placed with him. Father is employed as a barber, and his wife works at a daycare. Father testified he would be able to place N.A. in daycare and has the means to provide whatever N.A. may need. According to Father, he knew J.A. during the time he was in a relationship with Mother and would be supportive of sibling contact between J.A. and N.A.

The evidence reflects Father has engaged in continued illegal drug use during the pendency of this case, although Father testified he had not used marijuana since his admitted use two months prior to testifying at trial. Additionally, Father's status as a sex offender requires him to update the State with any change in his address, leaving him subject to criminal prosecution should he fail to do so as he did in 2018.

The guardian ad litem appointed to represent the children testified she had concerns regarding Father's continued marijuana use and regarding his status as a sex offender in that he could not have J.A. placed with him. However, the guardian stated she understood that status prevented Father from being around other children

and did not prevent him from having his own children in his home.[9] The guardian's recommendation was for the Department to be appointed permanent managing conservator of both children, but that Father be permitted to continue to have communication and visits with the children.

The State presented the following additional testimony related to N.A.'s best interest. The Department caseworker testified she believed termination of Father's parental rights was in N.A.'s best interest because of his criminal history and "he continues to test positive for illegal substance." The volunteer CASA advocate testified that termination in this case is in the best interest of the children, but she did not support this testimony with any opinions or observations of Father other than that she had observed a single visit of his with N.A. She did not offer any description of that visit or her impressions of Father, and she admitted that CASA had not reached out to Father about his goals. Although the CASA volunteer was aware Father had visited on other occasions, she did not observe any of those visits. The CASA volunteer also stated she had not been to Father's home. She testified her recommendation regarding termination took into account whether it would be better for the children to be placed together in the home of a maternal relative or a foster family or to be separated with N.A. placed with Father and J.A. placed elsewhere.

---

[9] The Department caseworker also admitted she had not seen anything regarding Father's requirement to register as a sex offender that would prevent him from having custody of his own child.

As for N.A.'s emotional needs, there was testimony regarding her relationship with J.A. According to the Department caseworker, although N.A. has a serious disposition, "somehow [J.A.] is somebody that can make her laugh very easily," and that the two children play together every day. Father testified that he was seeking custody of N.A., not J.A., but that he would not object to having both children placed with him and that he would promote contact between the siblings.

In assessing this *Holley* factor, we weigh the undisputed evidence of Father's ability to provide for N.A.'s physical and emotional needs against the evidence the State adduced that his past drug use and legal requirements as a sex offender may subject him to further criminal prosecution and thus jeopardize his ability to provide for N.A.'s needs. In *In re C.V.L.*, we determined the evidence of past drug use to be legally, though not factually, sufficient to support the trial court's best-interest finding because there was a live testimonial conflict as to the probability of Father's future use of illicit substances and hence the trial court's determination turned on the credibility of Father. *In re C.V.L.*, 591 S.W.3d 734, 756 (Tex. App.—Dallas 2019, pet. filed). In this case, there was no evidentiary challenge to Father's testimony concerning his future use of marijuana. The legal sufficiency standard *In re C.V.L.* described is not met here in view of the lack of relevant testimonial conflict. Thus,

under the standard set forth in *In re C.V.L.*, we are bound to conclude this evidence to be legally insufficient.[10] *See id.*

We conclude the State's evidence against Father was weak but not nonexistent and that Father's evidence in his favor was strong.

*Present and Future Emotional and Physical Danger to N.A.*

As to this factor, the State relies on the evidence of Father's continued illegal drug use and his status as a sex offender discussed above. We note that Father has never had custody of N.A. and that his failure to update his address resulted in community supervision, not incarceration. We further note that the time he spent incarcerated took place over a decade prior to N.A.'s birth. Although the State does not make this argument in response to this issue, we acknowledge Father's prior conviction for and confession to sexual assault of a child other than N.A. is evidence of past sexual abuse and that sexual abuse is conduct that endangers a child's physical or emotional well-being. *See In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (reviewing finding pursuant to Section 161.001(b)(1)(E), not best interest). As we discussed above, however, this evidence is no doubt relevant but of little probative value given the

---

[10] Where, as here and in *In re C.V.L.*, the parent challenges both the legal and factual sufficiency of the best-interest finding, we must address the legal sufficiency of the evidence, *In re K.B.*, No. 05-17-00428-CV, 2017 WL 4081815, at *2 (Tex. App.—Dallas Sept. 15, 2017, no pet.), and thus the prior panel decision in *In re C.V.L.* set forth the legal sufficiency standard that binds our decision here. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.).

ancient and isolated nature of the offense. Accordingly, we conclude this evidence on balance weighs in favor of terminating Father's parental rights but only slightly.

*Father's Parental Abilities*

The State argues there is no evidence of the quality of Father's parenting abilities. It is true that Father has never had custody of N.A. However, the record does establish Father actively pursued and obtained visits with N.A. and that he visited her on a weekly basis once permitted by the Department. The record also establishes Father has an adult son who was twenty years old at the time of trial. Although Father knew J.A., Father did not meet that child until approximately eighteen months after meeting Mother and does not know where J.A. was living during that time. We conclude the undisputed evidence of Father's parental abilities is weak but nevertheless favors him.

*Programs Available to Assist Father*

The record contains no evidence of this factor.

*Father's Plans for N.A. and Stability of Home and Proposed Placement*

The best interest standard does not permit termination merely because a child might be better off living elsewhere. *In re C.E.K.*, 214 S.W.3d 492, 504 (Tex. App.—Dallas 2006, no pet.). As noted above, the record establishes Father had "a good home" shared with family members supportive of his goal to obtain custody of N.A., had acquired furniture and a car seat for N.A., and had plans to place N.A. in daycare.

In contrast, the State's proposed placement was for N.A. and J.A. to be adopted, although there was no evidence that the foster family with which they were placed at trial intended to adopt the children. Further, the foster family with which the children were placed at the conclusion of trial was the second foster family the children had been placed with since trial began in April 2019. By the second trial hearing in June 2019,[11] the children were removed from the first foster family after the foster mother was arrested for aggravated assault with a deadly weapon. By the conclusion of trial in August 2019, the children had been placed with the second foster family for approximately three months.

The State points out N.A. was born to another woman while Father was separated from his wife and argues the "reasonable inference" that N.A.'s presence in the home could diminish the stability of Father's household by serving as a reminder of Father's relationship with Mother while separated from his wife. According to Father, his wife was not "pleasant" when she first learned her husband had had another child during their separation, but she understood that N.A. was conceived during their separation and she had joined Father on a few of his visits with N.A. Weighing the undisputed evidence of Father's "good home" and the State's proposed placement against the evidence of Father's marital harmony, we

---

[11] As noted above, the trial took place over three days in April, June, and August of 2019.

conclude this factor weighs in favor of Father and against termination of his parental rights.

*Father's Acts or Omissions and Excuses for Same*

As noted above, Father has a lifetime obligation as a registered sex offender to update his address, and he failed to do so in 2018. At trial, Father explained this lapse by noting that at the beginning of 2018, he was dealing with the deaths of two members of his family and the process of reconciling with his wife. The record contains no other evidence of Father's failure to update changes in his address since the requirement was imposed approximately fourteen years previously. We conclude this factor weighs in favor of Father and against termination of his parental rights.

*Summary of Factors and Conclusion*

To be sure, the conclusion as to whether termination is in the best of the child does not turn on proof of any unique set of factors, nor does it limit proof to specific factors. *See In re C.E.K.*, 214 S.W.3d 492, 498 (Tex. App.—Dallas 2006, no pet.). Undisputed evidence of only one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child; other cases, however, will present more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice to uphold a finding that termination is required. *See id.* Per our analysis above, we conclude the State presented some evidence that Father might have difficulty meeting N.A.'s physical

and emotional needs or that placement with him might lead to some emotional and physical danger to N.A.  However, there was strong undisputed evidence of Father's ability to provide for N.A.'s physical and emotional needs and to provide a stable home for the child.  The record as a whole may not have established that Father was ready to take on N.A. full custody.  But no reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights at this time was in N.A.'s best interest.  *In re J.F.C.*, 96 S.W.3d at 266.  The evidence supporting the finding that termination of Father's rights was in N.A.'s best interest was legally insufficient.  Accordingly, we sustain Father's third issue.

### E.    *Conservatorship*

In his sixth issue, Father argues the evidence is legally and factually insufficient to support the appointment of the Department as the managing conservator.

We begin by noting the quantum of proof required to support a conservatorship appointment differs from the level necessary to support a termination decision.  *In re N.T.*, 474 S.W.3d 465, 479 (Tex. App.—Dallas 2015, no pet.) (citing *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)).  Specifically, conservatorship determinations are subject to review for abuse of discretion.  *Id.* Further, unlike the standard of proof for the termination of parental rights, the findings necessary to appoint a non-parent as sole managing conservator need only

be established by a preponderance of the evidence.[12] *In re J.S.*, No. 05-18-01328-CV, 2019 WL 1417142, at *5 (Tex. App.—Dallas Mar. 29, 2019, no pet.) (citing FAM. § 105.005; *In re J.A.J.*, 243 S.W.3d at 616. Therefore, we reverse the trial court's appointment of a managing conservator only if we determine it was arbitrary or unreasonable. *In re N.T.*, 474 S.W.3d at 479.

Although trial courts are afforded broad discretion in deciding family law questions, the legislature has explicitly limited the exercise of that discretion when a nonparent seeks to be appointed as managing conservator. *Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990). When a court determines conservatorship between a parent and a nonparent, a presumption exists that appointing the parent as the managing conservator is in the child's best interest; this presumption is deeply embedded in Texas law. *See* FAM. § 153.131; *see also id.* The family code provides as follows:

> . . . unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

---

[12] In terminating Father's parental rights to N.A., the trial court made the finding that Father had engaged in conduct which endangers the physical and emotional well-being of N.A. and that he had knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well-being of the child pursuant to Section 161.001(b)(1)(E). Above, we sustained Father's second issue challenging the factual sufficiency of the evidence to support this finding. Thus, we concluded the trial court's finding was not supported by clear and convincing proof whereas in reviewing the trial court's conservatorship determination, we review whether such determination is supported by a preponderance of the evidence. *Compare* FAM. § 161.001(b)(1)–(2) *with In re J.S.*, 2019 WL 1417142, at *5 (citing FAM. § 105.005).

*Id.* § 153.131. The family code also provides a presumption that the court shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child. *Id.* § 153.191.

Father argues that because the evidence was insufficient to support the trial court's termination findings and instead showed Father was an appropriate placement, the trial court abused its discretion by appointing the Department as the managing conservator. The State responds that the record does not show any abuse of discretion where the evidence showed Father was a parent with a criminal history who failed to comply with the conditions of his community supervision and the requirements of his lifetime registered sex offender status and who continued to use illegal drugs during the pendency of this case.

Keeping in mind the rebuttable presumptions set forth in the family code and our review for abuse of discretion, we consider the following evidence related to the trial court's appointment of the Department as managing conservator of N.A. At the time of trial, N.A. was placed in a foster family with her sibling J.A. where the guardian ad litem for the children testified both children were thriving and "very good together." That foster family was the second family with which the children were placed during the pendency of these proceedings. The Department caseworker testified the children were removed from the first foster family—whom the

–25–

Department planned to adopt the children—after the foster mother was arrested and charged with aggravated assault with a deadly weapon.

According to the guardian ad litem for the children, "it would be a detriment" to N.A. if the child were placed with Father, and—although she did recommend to the trial court that Father "and the rest of the family members . . . continue to have some kind of communication and visits with the children," her overall recommendation was that it would be in both children's best interest for the Department to have permanent managing conservatorship of both children. The record also contains evidence, which Father does not dispute, of a history past sexual abuse of a child, which weighs against appointment of him as sole managing conservator or conservator with exclusive right to determine primary residence of N.A. *See* FAM. § 153.004 (providing in part, "It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is *not* in the best interest of the child if credible evidence is presented of a history or pattern of . . . sexual abuse by that parent directed against . . . a child."). Moreover, as the State noted, the evidence established Father's positive drug tests and admitted use of illegal drugs during the pendency of the proceedings, as well as his lifetime requirement to register as a sex offender, which he failed to comply with at least once and which affects his ability to be around other children and schools. *See, e.g.*,

TEX. CODE CRIM. PROC. ANN. art. 62.065 (notice requirements related to entry onto school premises).

However, the evidence also establishes Father lived in a good home with supportive family members and had willingness, ability, and means to support N.A.'s present and future physical and emotional needs.

We cannot conclude the trial court's decision in appointing the Department as managing conservator was arbitrary or unreasonable. However, this decision was made in conjunction with terminating the parental rights of both Mother and Father. And, as noted above, we sustained Father's second, third, and fourth issues challenging the evidence to support termination of his parental rights. Father requests that we reverse and remand to the trial court for further proceedings. Remand is appropriate when, for any reason, a case has not been fully developed below. *See In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at *3–4 (Tex. App.—Dallas Feb. 12, 2016, no pet.). Further, appellate courts have broad discretion to remand in the interest of justice. *See id.* at *4. We conclude remand of this case for a determination of conservatorship is appropriate. *See* TEX. R. APP. P. 43.3.

### F.    *Effectiveness of Father's Counsel*

In his fifth issue, Father complains he received ineffective assistance of counsel, arguing his counsel was deficient for failure to present evidence related to his sex offender status and its restrictions on his access to his child or other

children.[13]  Father also argues his counsel failed to present any photographs or testimony regarding the appropriateness of Father's residence.

Father had a right to counsel in the trial court, a right the Texas Supreme Court has held necessarily includes the right to effective assistance of counsel.  *See In re M.S.*, 115 S.W.3d 534, 550 (Tex. 2003).  Given the heightened standards employed in reviewing cases involving termination of parental rights, the Supreme Court has directed use of the criminal standard for ineffective assistance of counsel in these cases:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 545 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  However, in light of our decision above to reverse the termination of Father's parental rights and to remand the case for further proceedings consistent with this opinion, we need not address this issue.  *See* TEX. R. APP. P. 47.1.

---

[13] In support of this argument, Father points to the trial judge's questions of Father concerning the conditions related to his sex offender status.  The trial court specifically asked Father how he could have custody of a child in light of his sex offender status and whether that status restricted his access to children or to places where children are likely to be, such as schools and parks.

## CONCLUSION

We reverse the portion of the trial court's order terminating Father's parental rights to N.A., render judgment denying the Department's petition to terminate Father's parental rights to N.A., affirm the portion of the trial court's order terminating Mother's parental rights to J.A. and N.A., reverse the appointment of the Department as permanent managing conservator of N.A., and remand the case for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


Whitehill, J., dissenting opinion to follow.


191333F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.A. & N.A., CHILDREN

No. 05-19-01333-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas Trial Court Cause No. JC-17-1156-X. Opinion delivered by Justice Schenck. Chief Justice Burns and Justice Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part and **RENDERED** in part.

We **REVERSE** the portion of the trial court's order terminating Father's parental rights to N.A., **RENDER** judgment denying the Department's petition to terminate Father's parental rights to N.A., **AFFIRM** the portion of the trial court's order terminating Mother's parental rights to J.A. and N.A., **REVERSE** the appointment of the Department as managing conservator of N.A., and **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

Judgment entered this 28th day of April, 2020.