# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00421-CV

---

**Rian Hoover, Appellant**

**v.**

**Sarah Guillory, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CV-21-003162, THE HONORABLE DIMPLE MALHOTRA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Rian Hoover, acting pro se, appeals from the trial court's protective order in favor of Sarah Guillory and her son. *See generally* Tex. Code Crim. Proc. art. 7B. For the following reasons, we affirm.

## BACKGROUND

In July 2021, the State filed an application for a protective order on behalf of Guillory against Hoover. *See id.* art. 7B.001 (addressing applications for protective orders). The application was based on allegations of stalking. *See* Tex. Penal Code § 42.072 (stating elements of stalking). In a supporting affidavit, Guillory averred about her prior dating relationship with Hoover and his "acts of repeated and unwanted contact which have alarmed [her] and put [her] in fear for her safety." Guillory averred that their relationship ended on December 31, 2019, when Hoover "forced himself into [her] home" and she "asked him to leave several times." She

further detailed his unwanted contacts with her after their relationship ended, including emailing and repeatedly calling her through June 13, 2021, showing up at her house "unannounced and unwanted" with his daughter, and being seen around her workplace. She averred that he had a "history of being violent" and that she was "afraid of [his] sporadic violent behavior" and that he would "seek retaliation" against her for reporting him.

The trial court granted a temporary ex parte protective order that prohibited Hoover from contacting Guillory or any member of her household. *See* Tex. Code Crim. Proc. art. 7B.002 (addressing temporary ex parte orders). At that time, Guillory's teenage son was living with her. After Hoover was served, the trial court held a hearing to determine whether to grant the State's request for a protective order. *See id.* art. 7B.003(a) (requiring hearing on application for protective order), (b) (stating that trial court "shall issue a protective order" if it finds that "there are reasonable grounds to believe" that, relevant here, applicant is victim of stalking). At the time of the hearing, there were pending criminal charges against Hoover based on the allegations that he had committed the offense of stalking against Guillory. The witnesses at the hearing were Guillory, her sister, and Hoover.

In her testimony, Guillory confirmed that her supporting affidavit to the application for protective order was true and that Hoover's pattern of unwanted contact had caused her to feel harassed and fear for her own personal safety. She testified that she and Hoover continued a non-intimate relationship for a few months after their dating relationship ended but that he had continued to contact her after she had asked him not to do so. She testified that she had received emails from him that she considered to have a "threatening tone," that Hoover unsuccessfully attempted to force himself into her home one time, and that he "wrote a message on her parking spot" at her workplace and left gifts and a ring "outside of [her] door"

2

February 14, 2020.[1]  Guillory stopped answering Hoover's messages and in June 2020 moved without telling Hoover where she had moved.  Hoover continued attempting to contact her and in August 2020, Guillory noticed Hoover following her in his car.  She drove approximately nine miles while on the phone with her sister before pulling into a parking lot where she had a verbal altercation with Hoover and told him "[t]o leave [her] alone," but he continued attempting to contact her.  In May 2021, Hoover and his five-year-old daughter showed up at her house unannounced even though she had not told him where she lived, and she told him not to come to her house again.  At that point, she reported Hoover to the police.

The evidence showed that a detective contacted Hoover on June 15, 2021 and instructed him to cease and desist from contacting Guillory; later on June 15, Hoover sent an extensive Facebook message to Guillory's sister;[2] and two days later, Guillory found a watch

---

[1]  In her affidavit, Guillory averred that Hoover wrote "Be Mine" on her parking space.

[2]  In the extensive Facebook message, Hoover providing details of his version of what happened in his relationship with Guillory stated:

> Hello [Guillory's sister], hope you and your family are doing well.  I wish it didn't end the way it did. I would have liked to become part of the family but have been ostracized by [Guillory].  One week she helped me move and the next week I was completely shut out and she moved without so much as a goodbye. . . .  After a year of just a horribly depressing year I finally got my life back on a track with a new look at the future in a positive way that I thought it would be great to live it with [Guillory].  But she still has such hatred towards me like I'm the most horrible person in the world and I don't understand it.  So I tried reaching out to her to see if we could start talking again and maybe give it another chance to see if we could have that future together that I know we would have. . . . then we would know and there would be closure.  I even asked her if she would join me for couples counseling to work through any hold ups, feelings or regrets so we could move forward.  But still nothing, not even one word.  So I've known where she lived the whole time but never stopped by, drove by or interfered. 2 weeks ago I was with [my daughter], who loved [Guillory] so much and always asked about her. . . .  We were headed back home and was on a main road that goes by [Guillory]'s street and I pointed it out to [my daughter] and she got so

3

that she had given to Hoover on her driveway, and it had been damaged. The Facebook message, as well as emails and documentation showing missed calls from Hoover's phone number to Guillory's phone number, were admitted as exhibits. Guillory's sister testified that she was concerned about the Facebook message that Hoover sent to Guillory because Hoover said his love had turned to hate. The sister also testified about her phone call with Guillory when she was being followed by Hoover. The sister testified that she felt as though she needed to stay on the phone with Guillory and that Guillory "called her because she was worried, scared."

Hoover did not dispute most of the evidence about his actions toward Guillory and her family but explained the actions that he took. As to the Facebook message to Guillory's sister on the same day that he spoke with the detective, he testified that the detective "didn't mention the family," only Guillory, and "that's the only reason the email went to [Guillory's sister]." He also admitted that he had continued to contact Guillory, including calling her, but he testified that Guillory told him that it was fine for his daughter to call her and did not tell him not

---

excited and wanted to see [Guillory]. I went back. I let [my daughter] go up and knock on the door while staying well away not even close to the door. She was startled and then angry like I figured for stopping by. [Guillory and my daughter] went inside while I waited outside for about 10 minutes said a few words and tried to talk a little with [Guillory] who said not in front of [his daughter] and that [my daughter] can call her if she wants. So the next weekend [my daughter] and I were going to Top Golf and she wanted to invite [Guillory and her son] in which she ignored the call and declined her call later. She won't talk to me but to make [my daughter] sad is not nice at all. I left it alone the whole week and then today getting a call from the police saying to cease and desist all contact. Really??? You gotta be fucking kidding me. . . . It's so fucking stupid that I'm left baffled by her actions. It's such a shame that all the love I had for [Guillory] will now be turned to hate. This is something I was trying to avoid by getting some sort of communication and closure but this is what [Guillory] has chosen. This was never what I wanted nor even thought would've happened but here we are. I'm gonna leave it at that, I'm not going to even try to talk to her and tell her what a stupid bitch I think she is. See that's now what I think of her and it sucks. . . . I still can't think of any bad time we had together. Well my story ends here . . . .

4

to call her, that he spoke with her sometimes when he called, that his daughter also called sometimes, and that he had not attempted to contact Guillory after speaking with the detective. Hoover further admitted to following Guillory in his car but testified that they did not get out of their cars but talked with the windows down, that he asked for her forgiveness for something that he had said, that she would not forgive him, and that was why she hated him.[3] He also admitted that Guillory did not tell him where she had moved, testifying that he looked up her address on Google, and that when he and his daughter stopped by her house in May 2021, Guillory told him not to come back. Finally, he admitted that after he knew to stay away from Guillory and her family, he went to a deli where Guillory's son worked, but he testified that he did not know that her son worked there, explaining it was a "bad, bad coincidence."[4] Hoover further testified that he did not want anything to do with Guillory, had deleted her phone number, and did not know

---

[3] Hoover testified:

I never followed—I followed her one time because I saw her as she drove by. I was at the FedEx like I was doing making copies and she drove by and I waved her down. I wasn't hiding. I wasn't looking for her. I was on my way back home. I was leaving FedEx, she drove by and I honked[.] I flagged her down. We pulled up. I didn't get out of my car as [Guillory's sister] had said. And we just rolled down the windows and we spoke just out of the car like this, small talk you know, how are things going stuff like that.

She was mad and I said you—I apologized—I said I'll apologize every day to you I apologize a thousand times over and over again, but there's nothing I can do about it. You know[,] can you find it someway to forgive me and she said no, I can't. Because I said something in regards to her first husband to her son and that's why she hates me. And it's grown into—you mentioned that love into hate. Her love is all hate[.] [N]ow that's all it is and it's grown and it's festered into blowing this way out of proportion. This is not—these allegations are—are—it's not me.

[4] He testified: "I didn't go there to [Guillory's son]'s work, why would I go there if I knew he worked there[.] I knew this protective order I'd be in violation, that would be stupid of me."

how the watch was damaged, explaining that she kept many of his things. In his opinion, Guillory "has serious PTSD problems" and "seriously needs help. She has a mental condition."[5] In his closing argument, Hoover also advised the trial court that Guillory "can have [this] lifetime" protective order but "not by lying."[6] It was his position that "the whole thing [was] just a bunch of malarkey because she [is] still in contact with [him], she still was speaking with [him], obviously by the phone calls" and they "still had intimate relations, so yeah [they] spoke."

At the conclusion of the hearing, the trial court found that there were reasonable grounds to believe that Guillory was the victim of stalking, ruled that it would enter a lifetime protective order, and subsequently signed the protective order. This appeal followed.

## ANALYSIS

Hoover presents twenty issues on appeal. As best as we understand his issues, Hoover complains about the sufficiency of the evidence, evidentiary rulings, and the conduct of the State's attorney and contends that his constitutional rights were violated. He, however, generally fails to support his issues with substantive arguments or citations to authorities or the record. *See* Tex. R. App. P. 38.1(i) (requiring "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Davis v. American Express Bank FSB*, No. 03-12-00564-CV, 2014 Tex. App. LEXIS 9662, at *7 (Tex. App.—Austin

---

[5] He testified:

> She's chosen to take this route of court and yeah, this is what she's chosen instead of talking to me and we get—okay this is how we're going to handle this, instead of talking to me she went to the police. Why? Because I went by her house one time in a year and she flipped out because of her past. She has serious PTSD problems . . . she seriously needs help. She has a mental condition.

[6] He further argued: "Give her the protection but not under false allegations that's my point. She shouldn't have it under false allegations because all of it[s] false."

6

Aug. 29, 2014, no pet.) (mem. op.) ("Appellate issues must be supported by argument and authority, and if they are not so supported, they are waived."); *Lee v. Kaufman*, No. 03-10-00148-CV, 2011 Tex. App. LEXIS 6969, at *9–10 (Tex. App.—Austin Aug. 26, 2011, no pet.) (mem. op.) (finding issue waived that was not supported "with arguments, legal authority, or citations to the record"). "[P]ro se appellants are held to the same standard as parties represented by counsel to avoid giving unrepresented parties an advantage over represented parties." *Stewart v. Texas Health & Human Servs. Comm'n*, No. 03-09-00226-CV, 2010 Tex. App. LEXIS 9787, at *2 n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978)). Holding Hoover to this standard, we conclude that he has waived his issues by failing to support them with substantive arguments or appropriate citations to authorities and the record. *See* Tex. R. App. P. 38.1(i). Nonetheless, we will attempt to address his issues as best we understand them. *See Stewart*, 2010 Tex. App. LEXIS 9787, at *2 n.1 (addressing pro se appellant's "complaints as best we can, rather than striking his brief and dismissing the cause").

**Sufficiency of the Evidence**

Several of Hoover's issues appear to challenge the sufficiency of the evidence to support the trial court's protective order.

*Standard of Review*

We review a trial court's decision to grant or deny a protective order under chapter 7B of the Texas Code of Criminal Procedure for legal and factual sufficiency of the evidence. *State for Protection of P.B. v. V.T.*, 575 S.W.3d 921, 924 (Tex. App.—Austin 2019, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005) (describing legal

sufficiency review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual sufficiency review). We defer to the fact finder's implicit determinations of credibility and weight to be given to evidence and may not substitute our judgment for that of the trier of fact when the evidence falls within the zone of reasonable disagreement. *See City of Keller*, 168 S.W.3d at 819–20, 822; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

*Was the evidence sufficient to support the trial court's protective order?*

In his first, third, fourth, fifth, ninth, and tenth issues, Hoover argues that the trial court failed to require the "preponderance of the evidence" and erred by "overlooking": (i) the "excessive amount of false and erroneous reports/statements" made by Guillory, (ii) his "[a]nswers" that showed that he was communicating with Guillory "up to May 31, 2021 which would make any claim void and null," (iii) "the fact" that he said to her on May 31, 2021 "that he wanted closure and needed to know if there was going to be any future relationship or if they should part ways with no hard feelings," (iv) "the communication" in July 2020 where he offered to help Guillory, who was sick, and "the next time [they] talked was August 26, 2020, the day they saw each other driving," and (v) the "absence of a fact finder and the burden of proof to investigate" the damaged watch.

Relevant to this appeal, a trial court must grant a protective order if it determines that there are reasonable grounds to believe that the applicant was the victim of stalking. *See* Tex. Code Crim. Proc. art. 7B.003(b). Stalking is defined in section 42.072 of the Texas Penal Code to include conduct that causes harassment:

8

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 [Harassment], . . .;

(2) causes the person … to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to: . . .

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code § 42.072; *see id.* § 6.03(b) (stating that "person acts knowingly, or with knowledge," with respect to nature of conduct or to circumstances surrounding conduct when he is aware of nature of conduct or that circumstances exist), § 42.07 (stating elements of offense of harassment).

In this case, the trial court, as the fact finder, reasonably could have considered Hoover's admissions about his conduct after December 2019, found Guillory credible, and credited her testimony and the exhibits, which included the Facebook message and Hoover's documented repeated calls to Guillory for more than one year, in deciding to grant the protective order. *See City of Keller*, 168 S.W.3d at 819–20, 822; *Jackson*, 116 S.W.3d at 761. Guillory testified that she told Hoover not to contact her, but he continued to contact her for more than one year, including following her in his car at least one time, trying to force his way into her home, being seen at Guillory's workplace, appearing at her undisclosed address "unannounced and unwanted," appearing at her son's workplace after the protective order was in place, repeatedly calling her, and sending the Facebook message to Guillory's sister shortly after the detective instructed him to cease and desist from further contact.

9

Viewing the evidence under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that there were reasonable grounds to believe that Guillory was the victim of stalking. *See* Tex. Code Crim. Proc. art. 7B.003(b); *City of Keller*, 168 S.W.3d at 819–20, 822; *Jackson*, 116 S.W.3d at 761; *Cain*, 709 S.W.2d at 176. The evidence constituted reasonable grounds to believe that Hoover more than once and pursuant to a course of conduct directed specifically at Guillory acted in a manner that made Guillory and would have caused a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See* Tex. Code Crim. Proc. art. 7B.003(b); Tex. Penal Code § 42.072. Thus, we overrule Hoover's first, third, fourth, fifth, ninth, and tenth issues.

**Evidentiary Rulings**

In his sixth, fourteenth, fifteenth, and sixteenth issues, Hoover complains about "[o]mitted facts due to the one sided story being presented" and argues that the trial court erred by: (i) not allowing evidence about Guillory's "extensive history" in other relationships "over the past 16+ years"; (ii) not looking at "the correlation" between that history and the claims against him, where he "took every precaution he could not [to] be a trigger or cause fear or be a threat" given Guillory's "fragile state of mind and the hypervigilance and nightmares she faces and lives with every single day"; and (iii) "overlooking the fact that PTSD is real and Personality Disruptions that do not fully heal can cause Borderline Personality Disorders where fear of abandonment can cause delusional thoughts not based on reality."

As support for these issues, Hoover alleges facts in his briefing that are not in the appellate record, including Guillory's history in other relationships. Because there is no

10

evidentiary support in the record for his alleged facts, we do not consider them. *See* Tex. R. App. P. 34.1 (addressing contents of appellate record), 38.1(g) (requiring appellate brief to contain statement of facts supported by record reference); *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided."). Further, to preserve complaint about the exclusion of evidence, Hoover should have made an offer of proof with the trial court concerning the substance of what the excluded evidence would have been. *See* Tex. R. Evid. 103(a)(2); *In re M.G.N.*, 491 S.W.3d 386, 399 (Tex. App.—San Antonio 2016, pet. denied) (explaining offers of proof that preserve challenges to trial court's exclusion of evidence); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) ("The failure to make an offer of proof containing a summary of the excluded witness's intended testimony waives any complaint about the exclusion of the evidence on appeal."). Thus, we conclude that Hoover has not preserved these issues for our review and overrule them.

**Constitutional Claims**

Many of Hoover's issues also raise constitutional claims. In his eleventh, twelfth, eighteenth, and nineteenth issues, he argues that: (i) the trial court violated his civil rights and liberties by not allowing him to present evidence in his defense, (ii) the trial court violated the constitution by "having a preconceived belief" that he was guilty, (iii) that "the abuse of process," "malicious prosecution," "fabrication of false evidence," and "aggravated perjury" were "so overwhelming" as to deprive him of constitutional rights, and (iv) the trial court violated his constitutional rights under the Second and Tenth Amendments.

11

Hoover, however, failed to raise his constitutional claims with the trial court and, therefore, has not preserved them for our review. *See* Tex. R. App. P. 33.1(a) (requiring party to timely present complaint to trial court to preserve complaint for appellate review); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *Wetmore v. Bresnen*, No. 03-18-00467-CV, 2019 Tex. App. LEXIS 10923, at *20 (Tex. App.—Austin Dec. 18, 2019, no pet.) (mem. op.) (overruling constitutional challenge to statutes because appellant did not raise challenge or obtain ruling from trial court and therefore did not preserve challenge for review); *In re Baby Boy R.*, 191 S.W.3d 916, 921–22 (Tex. App.—Dallas 2006, pet. denied) (concluding that constitutional arguments were not preserved for appellate review because they were not raised in trial court). Because Hoover has not preserved these issues for our review, we overrule them.

**Conduct of State's Attorney**

In his second, seventh, and eighth issues, Hoover complains that the application alleged that Guillory was the victim of family violence, sexual assault, and stalking and argues that the definitions of family violence, sexual assault, and stalking were not applicable to this case and that by purposefully using them in the application for protective order, the State's attorney violated the rules of professional misconduct. In his thirteenth and seventeenth issues, Hoover contends that there was an "abuse of process with malicious intent to deceive the courts and state officials committing aggravated perjury" and that the trial court erred by allowing the State's attorney "to repeatedly demonstrate professional misconduct during the hearing." As with his constitutional claims, Hoover did not raise these claims with the trial court and,

therefore, has not preserved them for our review. *See* Tex. R. App. P. 33.1(a). On this basis, we overrule these issues.

**Duration of Protective Order**

In his twentieth issue, Hoover complains about the duration of the protective order. He argues that the requirements of section 85.025 of the Family Code were not met to grant a protective order that is more than two years. *See* Tex. Fam. Code § 85.025 (addressing duration of protective order under subtitle). The trial court, however, entered the protective order under article 7B of the Texas Code of Criminal Procedure, which allows for lifetime protective orders. *See* Tex. Code Crim. Proc. art. 7B.007(a) ("A protective order issued under Article 7B.003 may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order."). We overrule Hoover's twentieth issue.

**CONCLUSION**

Having overruled Hoover's issues, we affirm the trial court's protective order.[7]

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: August 31, 2022

---

[7] We deny Hoover's pending motions before this Court.

13